**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RED ROOF FRANCHISING, LLC, | : |
| | : Civ. A. No. 10-4065 (NLH)(JS) |
| Plaintiff, | : |
| | : |
| v. | : **OPINION** |
| | : |
| ASVIN PATEL, et al., | : |
| | : |
| Defendants. | : |

<u>Appearances</u>:

BENJAMIN A. LEVIN
HYLAND LEVIN LLP
6000 SAGEMORE DRIVE
SUITE 8301
MARLTON, NJ 08053-3900
and
PETER JAY BOYER
HYLAND LEVIN, LLP
6000 SAGEMORE DRIVE
SUITE 6301
MARLTON, NJ 08053-3900
*Attorneys for plaintiff and counter defendant, Red Roof*
*Franchising, LLC*

FRANK C. FUSCO
15 PRINCETON STREET
CLIFTON, NJ 07014
*Attorney for defendants and counter claimants, Asvin Patel, Aruna*
*Patel, AA Hospitality, LLC*

**<u>HILLMAN, District Judge</u>**

       This matter involves an alleged breach of a Red Roof

Inn franchise agreement.  Before the Court are three motions:

plaintiff's motion for partial summary judgment, defendants'

motion to amend or correct their opposition to summary judgment,

and defendants' motion to strike plaintiff's affidavit.  For the reasons explained below, the motion for partial summary judgment will be granted; the motion to amend or correct will be granted; and the motion to strike plaintiff's affidavit will be denied.

## I.   **JURISDICTION**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).  Plaintiff Red Roof Franchising, LLC ("RRF") is a Delaware limited liability company. The sole member of RRF is RRF Holding Company, LLC ("RRF Holding"), a Delaware limited liability company.  The sole member of RRF Holding is Red Roof Inns, Inc., a Delaware corporation with its principal place of business in Columbus, Ohio. Defendant AA Hospitality, LLC ("AAH") is a New Jersey limited liability company.  The members of AAH are defendant Asvin Patel, an individual and citizen of the State of New Jersey and defendant Aruna Patel, also an individual and citizen of the State of New Jersey.  Plaintiff alleges that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## II.   **BACKGROUND**

On August 23, 2002, defendants Asvin Patel and Aruna Patel (the "Patels"), entered into a written franchise agreement with plaintiff RRF's predecessor, Red Roof Inns, Inc., for a term of fifteen years.  The Patels operated a Red Roof Inn, using

2

RRF's system and marks, in Bellmawr, New Jersey.  On March 1, 2005, Red Roof Inns, Inc. assigned its rights and obligations under the franchise agreement to Accor Franchising North America, LLC ("Accor").  On June 13, 2006, the Patels assigned their interest in the franchise agreement to defendant AAH through a written transfer assignment and consent.  The Patels also executed a guarantee, indemnification and acknowledgment under which they guaranteed the performance of AAH's obligations under the franchise agreement.  On June 30, 2007, Accor assigned its rights and obligations under the franchise agreement to plaintiff RRF.

Under the franchise agreement, AAH was required to pay monthly royalty fees to RRF.  Failure to do so would result in a $50 late fee, plus 1.5% interest per month, and also constituted an event of default permitting RRF to terminate the franchise agreement after providing notice and opportunity to cure.  The franchise agreement also permitted liquidated damages in the event of premature termination.

RRF alleges that as of December 15, 2009, AAH was in arrears on payment of franchise royalty fees and other fees due under the franchise agreement.  RRF sent a notice of default dated January 19, 2010 to defendants.  The body of the letter stated that it was a "WRITTEN NOTICE OF DEFAULT AND NOTICE OF

TERMINATION." (capital letters in original), and that AAH was in default and owed $23,593.56.  The letter also stated that AAH had been given an opportunity to avoid default by making payments over several months to bring the account current to December 15, 2009.  The notice provided another opportunity to cure by paying the past due amount by March 26, 2010, or the franchise agreement would be terminated without further notice.

On April 20, 2010, RRF sent AAH a "Notice of Termination of Franchise Agreement" stating that AAH had failed to cure and that the termination of the franchise agreement was effective as of the date of the letter, April 20, 2010.  The notice advised AAH that it was to cease using the Red Roof Inn proprietary marks and system, and the Fidelio software, and to remove all signs, etc. displaying proprietary marks and systems.

RRF alleges that after termination, AAH continued to use RRF's franchise system and marks, and that as of October 17, 2011, the amount of unpaid royalty fees, plus interest, was $49,829.88, and that as of September 13, 2011, the amount of liquidated damages, plus interest was $98,050.47.  RRF brought claims of breach of contract of the franchise agreement and of the guarantee, and seeks specific performance in the removal of the Red Roof signs and marks, and other proprietary and confidential information.  Defendants filed counterclaims for

4

unconscionable franchise agreement and guarantee agreement,
breach of contract, breach of the covenant of good faith and fair
dealing, violation of the New Jersey Franchise Practices Act, and
wrongful conversion.  Plaintiff seeks summary judgment on its
breach of contract claims and on defendants' counterclaims.

### III. <u>DISCUSSION</u>

Before addressing plaintiff's motion for partial
summary judgment, the Court will address defendants' motions to
correct a footnote in their opposition brief and to strike
plaintiff's affidavit.

### A.   Motion to Amend or Correct Opposition

In their opposition brief, defendants state "With
regard to affirmative defenses, there exist genuine issues of
material fact regarding Red Roof's having committed a prior
material breach of the franchise agreement."  At the end of this
sentence was a footnote (footnote one) simply stating,
"Defendants hereby withdraw the remaining affirmative defenses
set out in their Answer."[1]  Defendants seek permission to correct

---

1    The affirmative defenses listed in defendants' amended
answer include: (1) Plaintiff's Amended Complaint fails to state
claims upon which relief can be granted; (2) The prior and
material breaches of contract and of the implied covenant of good
faith and fair dealing by plaintiff discharged any obligation on
the part of defendants to further perform and bars plaintiff's
claims for relief; (3) Plaintiff is barred from seeking equitable
relief under the doctrine of unclean hands; (4) The plaintiff, by

footnote one of their opposition.  According to the affidavit of

defendants' counsel, Jeffrey Goldstein, Esquire, in his haste to

file the opposition, he inadvertently deleted the majority of the

footnote.  The proposed corrected footnote states:

> Defendants hereby withdraw the remaining affirmative
> defenses set out in their Answer except for the
> wrongdoing of breach of contract and NJFPA. The
> discussion above on Red Roof's prior material breaches
> goes to both the related Affirmative Defense and the

---

its statements, acts and conduct, is estopped from asserting that
the defendants breached the agreements referred to in plaintiff's
Amended Complaint; (5) The contracts in question are
unconscionable and unenforceable under the circumstances
presented; (6) Plaintiff has waived any claims it may have had to
the relief sought; (7) The conduct of plaintiff made it
impossible or difficult for defendants to perform and discharged
any obligation on the part of defendants to perform the
obligations sued upon; (8) Plaintiff and defendants engaged in a
course of performance which altered and/or clarified the rights
of the parties under the written agreements to which plaintiff
referred in its Amended Complaint; (9) Plaintiffs' claims are
barred for failure to make required disclosures concerning the
agreements sued upon; (10) The defendants were discharged from
any further obligation to perform by the failure of the
consideration for their contracts; (11) Plaintiff's claims are
barred in whole or in part by its own wrongdoing in connection
with the problems alleged; (12) Plaintiff's claims are barred by
its failure to provide adequate opportunity to cure the alleged
problems; (13) Plaintiff's claims are barred, in whole or in
part, by the defense of failure to mitigate damages; (14)
Plaintiff's claims are barred, in whole or in part, by the
defense of statute of limitations; (15) Plaintiff's claims are
barred, in whole or in part, by the defense of fraud; (16)
Plaintiff's claims are barred, in whole or in part, by the
defense of breach of contract by the Plaintiff; (17) Plaintiff's
claims are barred, in whole or in part, by the defense of laches;
(18) Plaintiff's claims are barred, in whole or in part, by the
defense of waiver; (19) Plaintiff's claims are barred, in whole
or in part, by its violations of applicable laws, including the
applicable franchise laws.

Counterclaim on such. Similarly, Red Roof's default and
termination letters attached to Wallace's Affidavit go
to both the prior notice violation of statute (NJFPA)
as an Affirmative Defense as well as the Counterclaim
for same. (See letters from Red Roof dated January 19,
2010 ("Default Letter") and April 20, 2010
("Termination Letter") to Patel showing that even Red
Roof understood the January 19th letter to be a Default
letter, not a termination letter. Red Roof entitled it
"Notice of Default" and intended the second letter to
be the termination notice as it entitled the letter
"Notice of Termination." In addition, Mr. Wallace's
Declaration correctly identifies the two letters
separately – the first as a default letter and the
second as a termination letter.) (See also the
existence of active negotiations by the parties between
the two letters showing that there were efforts to cure
the default such that the default letter was not the
termination letter; and that there actually was payment
by Mr. Patel to cure the default, even though Mr.
Wallace states there was not. Patel Exhibit 9, dated
April 26).

Plaintiff responded that it does not oppose defendants'
motion to amend or correct the footnote as long as the Court also
considers its response to the points raised by defendants in
response to their footnote.

Accordingly, the Court will grant defendants' motion to
amend or correct footnote one of its opposition to summary
judgment.  The arguments raised by plaintiff in response to the
footnote shall be considered along with its motion for summary
judgment.

**B.   Motion to Strike Affidavit of Joy Purvis**

In support of its motion for partial summary judgment,

7

plaintiff attached the affidavit of Robert Wallace, Executive Vice President of RRF.  Attached to his affidavit were the various written agreements between the parties, the letter of default and letter of termination, and a schedule of outstanding franchise fees owed and calculation of liquidated damages.  In their opposition, defendants argue that Wallace has no individual personal knowledge of the billing, payment or accounts receivable history of the Patels, and that the schedule of fees owed do not correlate to any invoices or refer to the history of payments made by the Patels.  In their reply, plaintiff states that Wallace does have personal knowledge of the facts in this case, as he swears to in his affidavit.  Plaintiff also argues that the spreadsheets attached to the Wallace affidavit provide sufficient evidence of the amount owed and take into account the amounts paid by defendants.  Plaintiff further argues that defendants previously received invoices that correspond to each of the entries on the spreadsheets.

        The day after plaintiff filed its reply, it also filed the declaration of Joy Purvis, the accounts receivable/credit collections supervisor at Red Roof Inns, Inc., an affiliate of the plaintiff, RRF.  Purvis declared, under penalty of perjury, that she attached true copies of invoices issued by RRF to defendant AAH.  She declared that the invoices correspond to the

8

entries on the account status report attached as an exhibit to the Wallace affidavit.

Defendants move to strike the Purvis declaration on grounds that it was untimely and violated Local Rule 56.1(a)[2] because it constituted new evidence.  Plaintiff responds that the Purvis declaration was filed one day late due to an unexpected delay in Purvis being located out of State and requests that the Court permit it to file the Purvis declaration out of time.

There is no question that the proper time for plaintiff to have requested permission for an extension to file the Purvis declaration was prior to the reply deadline, and certainly prior

---

2    New Jersey Local Rule 56.1(a) states:

On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion.  A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed. The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.  In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition.  The movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers.

to the filing of the declaration on the Court's docket.  To
simply file it without permission and then only request
permission in response to a motion to strike is not proper
procedure.  The Court, however, has discretion to grant an
extension to file a reply brief, and finding no prejudice to the
defendants in permitting the declaration to be filed one day
after the deadline, shall grant plaintiff's request nunc pro
tunc.  See U.S. Small Business Administration as Receiver for
Penny Lane Partners, L.P. v. Herbst, No. 08-1396, 2009 WL
1351577, at *1 (D.N.J. May 14, 2009) (granting plaintiff an
extension of time to file its reply).

The Court also finds that the Purvis declaration does
not violate Local Rule 56.1(a).  The declaration does not provide
any new evidence or allege new facts.  Rather, it provides
supplemental evidence in support of the Wallace affidavit
regarding the invoices sent to the defendants, in response to the
arguments raised by defendants in their opposition to summary
judgment.

Therefore, defendants are permitted to correct their
footnote, and plaintiff is permitted to file its supplemental
declaration of Joy Purvis.  The remaining motion is plaintiff's
motion for partial summary judgment seeking judgment in its favor
on its breach of contract claims and on defendants'

10

counterclaims.

### C.    Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.

11

Celotex Corp., 477 U.S. at 323.  Once the moving party has met
this burden, the nonmoving party must identify, by affidavits or
otherwise, specific facts showing that there is a genuine issue
for trial.  Id.  Thus, to withstand a properly supported motion
for summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party.  Anderson, 477 U.S. at 256-57.  A party
opposing summary judgment must do more than just rest upon mere
allegations, general denials, or vague statements.  Saldana v.
Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

> 1.   **Choice of Law**

Plaintiff seeks summary judgment on its breach of the
franchise agreement and guarantee.  The franchise agreement and
guarantee contain choice of law provisions stating that the
agreements shall be governed by the laws of the State of Texas.

This Court exercises subject matter jurisdiction based
on the diversity of citizenship of the parties.  A court sitting
in diversity must follow the substantive choice-of-law rules of
the forum state.  See Robeson Industries Corp. v. Hartford Acc. &
Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999).  Here, New Jersey's
choice-of-law rules apply, the forum of plaintiff's choice.  New
Jersey law states that a contractual choice of law provision will
be upheld unless doing so would violate its public policy.

12

Instructional Systems, Inc. v. Computer Curriculum Corp., 130

N.J. 324, 614 A.2d 124, 133 (N.J. 1992) (following the

Restatement (Second) of Conflicts of Laws § 187 (1969), which

provides that "the law of the state chosen by the parties will

apply, unless either: (a) the chosen state has no substantial

relationship to the parties or the transaction and there is no

other reasonable basis for the parties' choice, or (b)

application of the law of the chosen state would be contrary to a

fundamental policy of a state which has a materially greater

interest than the chosen state in the determination of the

particular issue and which ... would be the state of the

applicable law in the absence of an effective choice of law by

the parties").

However, with regard to franchise agreements, "New

Jersey has a strong policy in favor of protecting its

franchisees." Instructional Systems, 130 N.J. at 345, 614 A.2d

at 135.  Since the franchisee is located in New Jersey, it

benefits from the protections of the New Jersey Franchise

Practices Act, N.J.S.A. 56:10-1, et seq., ("NJFPA") regardless of

the Texas choice of law provision.  See id.; Dunkin' Donuts

Franchised Restaurants LLC v. Strategic Venture Group, Inc., 2010

WL 4687838, at *3 (D.N.J. Nov. 10, 2010) (noting that parties

agreed that because the franchisees were located in New Jersey,

13

they benefitted from the protections of the NJFPA, regardless of the parties' contracting for Massachusetts law to govern disputes concerning or arising out of the Franchise Agreements) (citing Liberty Sales Assoc., Inc. v. Dow Corning Corp., 816 F.Supp. 1004, 1008 (D.N.J. 1993)).

The subject franchise is located in New Jersey. Plaintiff acknowledges that since AAH is a New Jersey franchise, the NJFPA applies to claims relating to the franchise agreement notwithstanding the Texas choice of law provision.  Thus, plaintiff's claim for breach of the franchise agreement and of the guarantee relate to the franchise agreement which would implicate the NJFPA and application of New Jersey law.  See King v. GNC Franchising, Inc., 2007 WL 1521253, at *2 n.1 (D.N.J. May 23, 2007) (recognizing that the franchise agreement contained a Pennsylvania choice of law provision but finding "New Jersey choice of law jurisprudence clearly holds that the law of the state in which the franchisee has its principal place of business should apply, despite a contractual choice of law provision."); Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J.Super. 666, 672, 506 A.2d 817, 820 (App.Div. 1986) ("New Jersey would apply its local law to govern the relationship between an out-of-state franchisor and a New Jersey franchisee.").

Nevertheless, plaintiff argues that the Texas choice of

14

law provision should be enforced with respect to all "common law issues."  The two cases cited by plaintiff in which the choice of law provision was upheld was applied to claims of breach of the implied covenant of good faith and fair dealing.  See General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 331 (3d Cir. 2001) (applying Michigan law pursuant to choice of law provision in dealer agreement to claim of breach of the implied covenant of good faith); Goldwell of New Jersey, Inc. v. KPSS, Inc., 622 F.Supp.2d 168, 193-94 (D.N.J. 2009) (applying Maryland law pursuant to choice of law provision in dealer agreement to claim of breach of the implied covenant of good faith).  Since defendants have withdrawn this claim, see Discussion III.A supra, whether Texas law would apply to this claim is no longer an issue before the Court.

Even if the Texas choice of law provision were upheld, there is no true conflict between Texas law and New Jersey law with regard to breach of contract.  Both States require a plaintiff to prove the existence of the following elements: a valid contract, performance, breach, and damages.  Compare Murphy v. Implicito, 392 N.J.Super. 245, 920 A.2d 678, 689 (App.Div. 2007) ("To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations

15

under the contract and that the plaintiff sustained damages as a result.") <u>with</u> <u>Godfrey v. Security Service Federal Credit Union</u>, 356 S.W.3d 720, 726 (Tex.App. 2011) ("[T]he elements of a breach of contract claim are the existence of a valid contract, performance or tendered performance by a plaintiff, breach of the contract by the defendant, and damages caused by the breach."). Since there is no actual conflict between New Jersey and Texas law, "the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." <u>Cooper v. Samsung Electronics America, Inc.</u>, 374 Fed.Appx. 250, 254 (3d Cir. 2010).  Accordingly, New Jersey law shall apply.

### 2.    Breach of Contract (Franchise Agreement)

As stated above, to prove a claim for breach of contract, a plaintiff must demonstrate that a valid contract existed and that the defendant failed to perform under the contract causing injury.  <u>See</u> <u>Murphy</u>, 920 A.2d at 689.  There is no dispute between the parties that a valid franchise agreement exists.  RRF argues that it has performed its duties under the contract but that AAH breached the franchise agreement by not paying monthly franchise royalty fees, reservation fees, marketing fees, booking fees and commissions, late fees, plus interest at the rate of 1.5 percent.  RRF also alleges that AAH,

16

has failed to pay liquidated damages, plus interest.  As result,
RRF alleges that, at the time of filing, AAH owes RRF $49,829.88
in unpaid franchise fees and $98,050.47 in liquidated damages.

Defendants do not dispute that certain fees are owed by
them to RRF under the contract.[3]  Rather, they raise two
arguments: (1) that RRF breached the contract and RRF's breach
excuses defendants from performance under the contract; and (2)
that the amount of fees owed has not been properly documented by
RRF.

With regard to the first argument, although a material
breach of a contract by one party can excuse performance by the
other party, see Travelodge Hotels, Inc. v. Honeysuckle
Enterprises, Inc., 357 F.Supp.2d 788 (D.N.J. 2005), "[u]nder
settled franchise law, '[u]nder no circumstances may the
non-breaching party stop performance *and* continue to take
advantage of the contract's benefits." Ramada Worldwide, Inc. v.
Hotel of Grayling, Inc., No. 08-3845, 2010 WL 2674460, at *9
(D.N.J. June 30, 2010) (emphasis in original)(citing S&R Corp. v.

_____

3    Defendants state that they assume for purposes of summary
judgment that RRF's allegation of their failure to pay is true.
If in fact, defendants feel that the allegation is untrue, the
time to dispute it is when faced with a summary judgment motion.
Thus, the Court will also assume that defendants did not pay the
required fees under the franchise agreement.  In any event,
defendants provide no facts that could show that they paid the
fees.

Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992));
General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296,
315 n.5 (3d Cir. 2001) ("It is hornbook law that when one party
to a contract commits a material breach, the non-breacher has the
option of either continuing the contract and suing for partial
breach, or terminating the agreement in its entirety.") (citing 2
E. Allan Farnsworth, FARNSWORTH ON CONTRACTS § 8.16, at 495 (2d ed.
1998)).  Thus, the relevant inquiry is whether RRF materially
breached the franchise agreement so that the defendants were
justified in not paying the required fees, and if defendants also
ceased to take advantage of the benefits under the franchise
agreement.

        Defendants rely on the declaration of Asvin Patel in
support of their claim that RRF's actions amounted to breach
under the contract.  Specifically, Patel states that: RRF failed
to create any new advertising or marketing programs that
generated new customers for the hotel; RRF failed to operate the
current advertising and marketing programs efficiently; RRF did
not have the expertise to operate the "RediCard Frequent Card
Program"; RRF did not put any revenue into the "corporate
program" which dealt with trucking companies; the reservation
system went "down" or failed eight to nine times, sometimes for a
day and a half, during which time it was not possible to make

18

reservations; RRF visited the franchise only once a year, or once every eighteen months; there were no guest surveys linked to the "Fidelio system"; RRF never performed a "sales blitz"; RRF did not continue the "Operation Red" renovations program; RRF did not provide underlying documents for invoices when requested; certain fees such as "Global Distribution System (GDS) fees" and "connectivity fees" increased; and RRF failed to install a front office system at a cost of $25,000.  The Patel declaration also generally lists 23 areas in which he alleges RRF failed to perform, but which are not supported by any facts.[4]

In their brief, defendants cite to section 3 of the franchise agreement which lists the duties of the franchisor. Section 3, however, does not specify that RRF must create new advertising or marketing programs; must have expertise in operating the "RediCard Frequent Card Program"; must put revenue into a "corporate program"; must visit the franchise more than once a year; must provide guest surveys linked to the "Fidelio

_____

4    This list of duties is also repeated in defendants' brief. Although defendants cite to paragraph 3 of the franchise agreement in support of their list, their list appears much more expansive than the actual agreement.  It is not clear whether the duties appear in other sections of the agreement since defendants provide no further citations.

system"; [5] must perform a "sales blitz"; must continue the "Operation Red" renovations program; must provide underlying documents for invoices when requested; [6] must not increase "GDS fees" and "connectivity fees"; or must install a front office system. [7]

RRF argues that it never agreed in the franchise agreement to create "new" advertising or marketing programs, or to continue the "RediCard Frequent Card Program."  RRF states that there is no obligation for it to visit defendants' facility. Thus, the most that defendants have alleged regarding these complaints is a dissatisfaction with RRH.  They have not shown that RRF has breached the franchise agreement. [8]

---

5    Exhibit B to the franchise agreement is the Fidelio Software License Agreement.  Defendants do not indicate that there is any provision in Exhibit B regarding guest surveys.

6    Although not technically a breach of Section 3 of the franchise agreement, RRF would have a duty to provide supporting documentation of its invoices.  This complaint appears to now be moot given the declaration of Joy Purvis attaching the underlying invoices.

7    Defendants do not indicate where in the franchise agreement, or its exhibits, is any promise to install a front office system. If defendants paid $25,000 pursuant to the agreement, but RRF failed to install the system, then those facts could support a claim of breach.  Defendants, however, have produced no evidence that $25,000 was paid.

8    Although defendants rely heavily on Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc., 357 F.Supp.2d 788 (D.N.J. 2005), that case is not on point with the issues in this case.

Even if the complaints could be considered breaches of the franchise agreement,[9] defendants continued to take advantage of the contract's benefits.  As stated above, under settled franchise law, the non-breaching party may not stop performance while continuing to take advantage of the contract's benefits.  See Ramada, 2010 WL 2674460, at *9; S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992) ("Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the

---

In Travelodge, the Court denied summary judgment because it permitted parole evidence suggesting that Travelodge had promised to increase defendant's reservations by fifteen percent to induce it to enter into the contract.  Id. at 790-91, 795.  There are no such allegations of fraud in the inducement in this matter.  Also, in Travelodge, the franchisee terminated its contract with Travelodge and ceased to operate as a Travelodge before Travelodge sued to recover unpaid recurring fees.  Id. at 793-94.  The franchisee did not impermissibly seek to retain benefits under the franchise agreement while not paying fees it owed.  Id.  Here, RRF, not the defendants, terminated the agreement and defendants continued to take advantage of the benefits of the contract.

9    Two of the listed complaints by defendants could be construed as breaches; namely, that RRF did not efficiently operate the advertising and marketing programs, and that the reservation system failed eight to nine times.  Section 3.3 of the franchise agreement requires that franchisor "maintain and administer an Accel Reservation System and a Marketing Program, subject to the provisions of Section 10."  Section 10 outlines duties regarding marketing.  If RRH failed to properly operate the advertising and marketing programs, and the Accel program failed a certain number of times, such events could be construed as breaches.

non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages.  Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits.").

Here, defendants stopped paying fees but continued to operate the franchise as a Red Roof Inn and continued to receive the advantages of operating as a franchisee under the contract. Thus, any alleged breaches by RRF did not excuse defendants from performance while they continued to benefit from the contract. See S&R Corp., 968 F.2d at 377 (finding franchisee could not stop royalty payments to franchisor and continue to operate service centers under Jiffy Lube name); McDonald's Corp. v. Robert A. Makin, Inc., 653 F.Supp. 401, 403 (W.D.N.Y. 1986) (finding that failure of defendants to pay the monthly franchise fees was breach of the contract despite any alleged wrongs of plaintiff and that defendants could not use their counterclaims to avoid judgment for amounts already due under franchise agreement).[10]

Defendants' second argument is that RRF did not

---

[10]  This ruling does not adjudicate defendants' counterclaims for breach of contract which will be addressed separately below. See Makin, 653 F.Supp. at 403 (adjudicating defendants' counterclaims even though Court rejected their claim that alleged wrongs of plaintiff constituted affirmative defenses to defendants' non-payment of franchise fees).

adequately support the amount of damages.  As stated above, RRF submitted copies of the underlying invoices attached to the declaration of Joy Purvis.  RRF has also submitted the affidavit of Robert Wallace and attached as Exhibits J and K, a calculation of damages.[11]

Defendants argue that the calculation of damages does not take into consideration the payments made by them, and does not indicate the type of fee.  Defendants' dispute over the amount of damages, however, does not challenge the fact that RRF incurred damages as a result of the breach.  Given that RRF has established that it incurred damages, it is entitled to partial summary judgment on its claim of breach of the franchise agreement.  See Barefoot v. Wellness Pub., 2009 WL 4143110, at *10 (D.N.J. Nov. 17, 2009) (denying defendants' summary judgment motion where defendants did not dispute the fact of plaintiff's alleged damages but rather disputed the amount because "mere uncertainty as to the amount [of damages] will not preclude the right of recovery.") (citing Tessmar v. Grosner, 23 N.J. 193, 203, 128 A.2d 467 (1957)).  However, the Court agrees that

---

11   Defendants argue that Wallace has no personal knowledge regarding the fees owed.  In his affidavit, Wallace swears that he is personally familiar with the facts and circumstances regarding the events stated in his affidavit.  There is no indication that the Wallace affidavit is not adequate and it shall be considered as evidence by the Court.

plaintiff must provide a full and complete accounting of damages, including a breakdown by type of fee charged and history of payments made by defendants.[12]  Accordingly, plaintiff shall file a separate motion for award of damages in keeping with this Opinion.

### 3.   Breach of Contract (Guarantee)

When the Patels assigned their interest in the franchise agreement to defendant AAH, they also executed a guarantee, indemnification and acknowledgment under which they guaranteed the performance of AAH's obligations under the franchise agreement.  RRF argues that the Patels breached the guarantee.

As with any contract, RRF must demonstrate that a valid contract existed and that the defendants failed to perform under the contract causing injury.  See Murphy, 920 A.2d at 689.  RRF has attached a copy of the guarantee as Exhibit F to the Wallace affidavit.  The guarantee states that "as an inducement" to the franchisor "to consent to the transfer" of the franchise agreement between the franchisor and Asvin and Aruna Patel, to

---

12   The Court also finds that although paragraph 25 of the Wallace affidavit states that the franchise fees owed were $37,104.74, the schedule of outstanding franchise fees attached as Exhibit J lists 37,386.48 as the amount owed. Thus, there is some uncertainty regarding the exact amount of damages.

AAH, that the Patels guarantee to franchisor that all of franchisee's obligations under the agreement will be punctually paid and performed.  The guarantee is signed by the Patels.

RRF states that it, and its predecessor, Accor, performed under the guarantee since it permitted the Patels to transfer the franchise to AAH.  RRF states that the Patels have breached the guarantee by failing to pay fees to RRF under the franchise agreement, as required under the guarantee.  RRF also states that the Patels were to ensure that AAH ceased using RRF's system and marks after termination but that they failed to do so in breach of the guarantee.  RRF states that it has been damaged and is owed $49,829.88 in unpaid franchise fees, and $98,050.47 in liquidated damages.

Defendants do not address RRF's argument with regard to breach of the guarantee.  Extrapolating from their argument regarding the breach of the franchise agreement, presumably, defendants' position is that since RRF breached the franchise agreement, that AAH does not owe the alleged fees, and if AAH does not owe the alleged fees, then the Patels are not in breach of the guarantee.

As explained above, RRF has met the elements of breach of the franchise agreement, and has established that AAH owes it fees under the franchise agreement (in an amount to be

25

determined).  RRF has also established that a valid guarantee
exists, that it performed under the guarantee, that the Patels
did not abide by the terms of the guarantee, and that RRF
incurred damages as a result.  Defendants have not presented any
evidence in opposition.  Therefore, RRH's motion with regard to
breach of contract regarding the guarantee will be granted.

### 4.  Counsel Fees

RRF asserts that both the franchise agreement and
guarantee provide that upon default, RRF is entitled to recover
its counsel fees and costs incurred in enforcing its rights under
the agreements.  Even though attorneys' fees are generally
considered procedural and federal courts apply federal procedural
rules rather than state procedural rules, in diversity cases, the
Third Circuit has held that state procedural rules apply
concerning attorneys' fees.  McAdam v. Dean Witter Reynolds,
Inc., 896 F.2d 750, 775 n. 47 (3d Cir. 1990) (stating that
"[s]tate rules concerning the award or denial of attorneys' fees
are to be applied in cases where federal jurisdiction is based on
diversity or if the court is exercising pendent jurisdiction,
provided such rules do not run counter to federal statutes or
policy considerations.").  Under New Jersey law, attorney fee
cpntract clauses are enforceable.  Ramada Worldwide Inc. v.

Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *7
(D.N.J. March 19, 2012) (finding that "Attorneys' fees clauses
are enforceable in New Jersey" and awarding attorneys' fees and
costs based on provision in franchise agreement); see Jackson
Hewitt, Inc. v. Barnes Enterprises, No. 10-05108, 2012 WL
1600572, at *3 (D.N.J. May 7, 2012) (awarding attorneys' fees and
costs where franchise agreement made clear that plaintiff was
entitled to such award).  Defendants do not dispute the provision
in the franchise agreement or guarantee awarding reasonable
attorneys' fees and costs.  Accordingly, RRH is entitled to its
reasonable attorneys' fees and costs.[13]

### 5.   Defendants' Counterclaims

In addition to seeking summary judgment on its breach
of contract claims, RRF moves to dismiss defendants'
counterclaims.  Defendants did not address any of plaintiff's
arguments to dismiss their counterclaims in their opposition
brief.  Therefore, the Court will rely on defendants' argument
raised in their amended answer as well as their revised footnote
regarding their affirmative defenses for breach of contract and
NJFPA violations.  Each counterclaim is addressed separately

---

13   Counsel must abide by Fed.R.Civ.P. 54, and Local Rules 54.1
and 54.2 setting forth the requirements for filing a motion for
attorneys' fees and application for costs.

below.

### 1.    Count 1 (Unconscionable Franchise Agreement/Guarantee Agreement)

RRF moves to dismiss this counterclaim on grounds that there is no evidence in the record to suggest that either the franchise agreement or guarantee was either procedurally or substantively unconscionable.  Since defendants withdrew this counterclaim and did not provide any argument or evidence in opposition, this counterclaim shall be dismissed.

### 2.    Count 2 (Breaches of Contract by Red Roof- Franchise Agreement)

It is now defendants burden to show that a valid contract existed and that RRF failed to perform under the contract causing injury.  See Murphy, 920 A.2d at 689.  As stated, there is no dispute that a valid franchise agreement exists.  As explained in footnote 9 supra, the Court has determined that two of the various listed complaints by defendants could potentially be construed as breaches; namely, that RRF did not efficiently operate the advertising and marketing programs; and that the reservation system failed eight to nine times, sometimes for a day and a half, during which time it was not possible to make reservations.  Section 3.3 of the franchise agreement requires that the franchisor "maintain and

administer an Accel Reservation System and a Marketing Program, subject to the provisions of Section 10." Section 10 outlines duties regarding marketing. If RRH failed to properly operate the advertising and marketing programs, and the Accel program failed a certain number of times, such events could be construed as breaches.

However, regardless of possible breach, as explained above, if RRF did breach the contract, then defendants had the option of either terminating the contract and ceasing to perform, or continuing to perform and suing for damages. See General Motors, 263 F.3d at 315 n.5 ("It is hornbook law that when one party to a contract commits a material breach, the non-breacher has the option of either continuing the contract and suing for partial breach, or terminating the agreement in its entirety."); Makin, 653 F.Supp. 405 ("It is hornbook law that when a breach of contract occurs, the injured party may either retain the benefits and obligations of the contract and sue for damages or declare the contract terminated and perform no further."). Here, defendants did not pay fees as agreed to under the franchise agreement, but continued to operate as a Red Roof Inn. Accordingly, defendants' counterclaim for breach of contract shall be dismissed.

29

### 3. Count 3 (Breach of the Covenant of Good Faith and Fair Dealing)

RRF moves to dismiss this counterclaim on grounds that there is no evidence that it breached the covenant of good faith and fair dealing. Since defendants withdrew this counterclaim and did not provide any argument or evidence in opposition, this counterclaim shall be dismissed.

### 4. Count 4, 5 and 6 (Violation of New Jersey Franchise Practices Act, N.J.S.A. 56:10-5, 56:10-7)

The New Jersey legislature enacted the NJFPA to remedy the disparity in bargaining power between franchisors and franchisees by protecting franchisees against indiscriminate terminations and nonrenewals. See, e.g., Dunkin' Donuts v. Middletown Donut Corp., 100 N.J. 166, 176-77, 495 A.2d 66, 71 (1985). Defendants allege that RRF has violated the NJFPA, which prohibits

> any franchisor ... to terminate, cancel, or fail to renew a franchise without having first given written notice setting forth all the reasons for such termination, cancellation, or intent not to renew to the franchisee at least 60 days in advance of such termination, cancellation, or failure to renew... . It shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of this act, good cause for terminating, canceling, or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise.

N.J.S.A. 56:10-5.

In their amended complaint, defendants state that RRF lacked good cause to terminate the franchise agreement (Count 4), or fail to renew it (Count 6), and also failed to provide proper notice of termination (Count 5).  Defendants also allege under each Count that RRF violated the NJFPA which prohibits a franchisor from imposing unreasonable standards of performance upon a franchisee. N.J.S.A. 56:10-7(e).

Defendants also generally allege in their amended complaint that RRF did not have good cause to terminate the franchise agreement, or for nonrenewal, for the following reasons:

a.  the Patels had fully complied to the best of their capabilities with the requirements imposed upon them by Red Roof;

b. the Patels had substantially complied to the best of their capabilities with the requirements imposed upon them by Red Roof;

c. the requirements that Red Roof previously attempted to and did impose on the Patels were unreasonable;

d. there was no bona fide justification for Red Roof's termination, and nonrenewal;

e. Red Roof's termination stripped the Patels of their reasonable opportunity to recoup their franchise investment and

31

obtain a reasonable rate of return on its franchise investment;

f. Red Roof refused to negotiate in good faith with the Patels regarding the terms of the new non-negotiable unconscionable franchise agreement; and

g. the termination was grossly disproportionate to the breaching-act that Red Roof cites against the Patels, because Red Roof was the primary actor in bringing about the wrongful termination.

The NJFPA makes it unlawful for a franchisor to "terminate, cancel or fail to renew a franchise without good cause." Since defendants allege that RRF terminated the contract, there is no additional, separate cause of action for failing to renew or for canceling the contract. Since RRF sent a letter of termination, we conclude that the franchise agreement was terminated. Therefore, Count 6 alleging nonrenewal of the franchise agreement will be dismissed.

With regard to Count 4, defendants allege that RRF terminated the franchise agreement without good cause and imposed unreasonable standards of performance. RRF alleges that defendants failed to pay the required fees which constituted an event of default under Section 13.4 of the franchise agreement.

Good cause is defined under the NJFPA as "failure by the franchisee to substantially comply with those requirements

imposed upon him by the franchise." N.J.S.A. 56:10-5; <u>General
Motors</u>, 263 F.3d at 320 n.11 (finding that the statute adopts a
specialized definition of "good cause."). "'Substantial
compliance' is surely something less than absolute adherence to
every nuanced term of an agreement, but [it]-at a
minimum-requires that the franchisee refrain from acting in
direct defiance of a term of the [a]greement." <u>General Motors
Corp. v. New A.C. Chevrolet, Inc.</u>, 91 F.Supp.2d 733, 740 (D.N.J.
2000).

       Section 13.4 and 13.4.1. of the franchise agreement
provide that a default occurs if franchisee fails to pay any
monies owing to franchisor when due.  Defendants have not
presented evidence that they paid the money allegedly owed, or
cured their default.  In fact, defendants have assumed for
purposes of this motion that they did not pay the money, although
they maintain that RRF has not provided sufficient documentation
to support the alleged amount owed.

       Thus, being in default under the franchise agreement
would constitute failure to substantially comply with the
requirements imposed by the franchise.  Therefore, RRF has
established that it had good cause to terminate the franchise
agreement.  <u>See</u> <u>Authorized Foreign Car Specialists of Westfield,
Inc. v. Jaguar Cars, Inc.</u>, No. 98-6008, 1998 WL 34347444, at *2,

33

(3d Cir. Nov. 16, 1998) ("The NJFPA provides no relief to franchisees whose termination resulted from their own misconduct."). Accordingly, Count 4 of the counterclaim will be dismissed.

Defendants also argue that RRF failed to provide proper notice of termination under the NJFPA (Count 5). RRF sent a letter with the caption "Notice of Default" dated January 19, 2010 to defendants. The first sentence in the body of the letter states "This letter is a "WRITTEN NOTICE OF DEFAULT AND NOTICE OF TERMINATION with respect to your Franchise Agreement." (capital letters in original). The letter also states, "**If you fail to cure the Past Due Amount** [$23,593.56] **by <u>March 26, 2010</u> (the "Termination Date") ... your Franchise Agreement will be terminated without further notice to you effective immediately on the Termination Date.**" (Bold and underline in original).

On April 20, 2010, RRF sent AAH a letter referenced as a "Notice of Termination of Franchise Agreement" stating that AAH had failed to cure and that the termination of the franchise agreement was effective as of the date of the letter, April 20, 2010.[14]

---

14   Prior to that, a letter dated April 16, 2010 was sent to AAH establishing a payment plan over the next six months to pay the then balance of $32,042.34. The letter required that AAH execute

The NJFPA requires that a franchisor must provide
written notice setting forth all the reasons for termination, at
least 60 days in advance of such termination.  See N.J.S.A.
56:10-5.  Defendants' revised footnote one suggests that the
January 19, 2010 letter was only a notice of default and did not
serve as a notice of termination.  Defendants maintain that the
April 20, 2010 letter was the first notice of termination and,
therefore, RRH did not provide 60 days' notice.

Although the January 19, 2010 letter only states
"Notice of Default" in the "Re:" line, it is clear that the
letter is a notice of termination.  The letter states it is a
notice of termination in all caps, and also provides in bold
lettering and underlined that the date of termination would be
March 26, 2010.  Such notice complies with N.J.S.A. 56:10-5.

Defendants also assert that RRF did not permit them to
cure the default.  In their revised footnote, defendants ask the
Court, in a parenthetical, to "(See also the existence of active
negotiations by the parties between the two letters showing that
there were efforts to cure the default such that the default
letter was not the termination letter; and that there actually

---

it and fax it back by 5:00 p.m. that day along with payment of
$5,271.07; otherwise, the franchise agreement would be terminated
that day.  There is no evidence that defendants responded that
day.

was payment by Mr. Patel to cure the default, even though Mr. Wallace states there was not)", and cite to Patel declaration Exhibit 9.[15]

There are several problems with this Exhibit.  First, there is no authentication of the letter.  Although this letter is attached to Patel's declaration, there is no discussion of it or reference to it by Asvin Patel in his declaration.  Without proper evidentiary foundation, the letter cannot be considered by the Court.  "It is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J. 1995).

Second, defendants make no mention of the April 26, 2010 letter in their brief.  The only possible reference the

---

15  "Exhibit 9" is a letter dated April 26, 2010, presumably sent to Rob Wallace, Trina S. Haynes, Jody Shaffer, & Edward Mirza in which Patel states that he is providing his credit card authorization for "this month's royalties as well as the first installment on the payment plan."  Patel writes that in sending the authorization, that his property will be recognized as "in good standing, so that it is held out to the public as a member of the Red Roof community."  Otherwise, Patel requests that the payment offer is withdrawn.  Attached as "Exhibit 9B" is a copy of a "Red Roof" credit card payment receipt, dated April 26, 2010, showing payment from Patel's credit card in the amount of $5271.07, although there is no indication of the payee.  The Court notes that the credit card information should have been redacted.  Therefore, counsel is directed to comply with Local Rule 5.2(17).

Court can find is the one sentence in the revised footnote. Otherwise, there is no discussion, or reference to any deposition testimony or affidavit regarding defendants' alleged efforts to cure prior to termination.

Lastly, the letter was dated April 26, 2010, which is after the January 19, 2010 notice of termination and after the franchise agreement was formally terminated on April 20, 2010.[16] Thus, even if defendants were able to correct the evidentiary problems with Exhibit 9, an attempt to cure after proper notice of termination would not provide grounds for a NJFPA violation under these circumstances.

Accordingly, an unaddressed letter which is not authenticated by affidavit or declaration, or even referenced or discussed, falls short of admissibility as evidence for summary judgment. See Egli v. Stevens, No. 93-157, 1993 WL 153141, at *8 n.7 (E.D.Pa. May 11, 1993) (finding reports and letters not admissible as evidence because they were either not supported by an appropriate affidavit or properly authenticated).  Therefore, defendants' NJFPA counterclaim will be dismissed.

---

16   In the letter, Patel also refers to a check dated March 25, 2010, for a February 2010 payment that was not cashed.  No copies of the check were attached and there is no indication that the amount of the check was for the "Past Due Amount."  Rather, it appears that the check may have only been for a monthly payment (February 2010).

### 5.   Count 7 (Wrongful Conversion)

RRF moves to dismiss this counterclaim on grounds that there is no evidence in the record that RRF wrongfully exercised dominion over the Patels' personal property.  Since defendants withdrew this counterclaim and did not provide any argument or evidence in opposition, this counterclaim shall be dismissed.

### 6.   Punitive Damages

Since none of defendants' counterclaims survive, their request for punitive damages shall be denied.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, the motion for partial summary judgment filed by plaintiff will be granted; the motion to amend or correct footnote one filed by defendants will be granted; and the motion to strike plaintiff's affidavit filed by defendants will be denied.  The Court will enter a briefing schedule regarding the motion for damages and for attorneys' fees.


                                      s/Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

Dated:     June 28, 2012