**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

RED ROOF FRANCHISING LLC,     :
INC.,                          :   Civil Action Nos.
                            :   10-cv-4065
          Plaintiff,     :   10-cv-4120
                            :
        v.                  :
                            :
AA HOSPITALITY NORTHSHORE, LLC   :
*et al.*,                        :
                            :
          Defendants.    :


<u>**APPEARANCES**</u>:
PETER J. BOYER, ESQUIRE
BENJAMIN A. LEVIN, ESQUIRE
HYLAND LEVIN LLP
6000 SAGEMORE DRIVE
SUITE 6301
MARLTON, NEW JERSEY 08053-3900
    *Attorney for Plaintiff,*

FRANK C. FUSCO, ESQUIRE
15 PRINCETON STREET
CLIFTON, NEW JERSEY 07014
    *Attorney for Defendants.*


<u>TABLE OF CONTENTS</u>

I.   FACTUAL AND PROCEDURAL BACKGROUND...................... 4

    A.   Factual Background Related to Civil Action
        10-cv-4065 ...................................... 5

    B.   Factual Background Related to Civil Action
        10-cv-4120 ...................................... 7

II.  DISCUSSION ......................................... 8

    A.   Defendants' Motion for Reconsideration in Civil Action
        10-cv-4065 ...................................... 9

    B.   Plaintiff's Motion For An Order Determining Amount Due
        and Entering Final Judgment in Civil Action
        10-cv-4065 ...................................... 18

1.   Damages for Unpaid Franchise Fees .......... 20

     a.   Defendants' Claims that Plaintiff's
          Accounting of Damages is Incomplete .... 20

     b.   Defendants' Claims that Plaintiff's
          Accounting of Damages is Incorrect ..... 22

          I.   Defendants' Recorded Payments ..... 23

          ii.  Hardware Monitoring and
               Maintenance Fees.................. 26

          iii. Travel Agent and GDS Fees ......... 31

          iv.  Signature Program Fees ........... 32

          v.   In-House Management Training Fee .. 35

          vi.  Miscellaneous Other Expenses ..... 37

     c.   Accrued Interest on the Unpaid Franchise
          Fees .................................. 37

2.   Liquidated Damages ......................... 39

3.   Attorneys' Fees ............................ 44

4.   Summary .................................... 45

C.   Defendants' Motion for Reconsideration in Civil Action
     10-cv-4021.................................... 46

D.   Plaintiff's Motion For An Order Determining Amount Due
     and Entering Final Judgment in Docket No. 10-4120
     ............................................... 46

     1.   Signature Program Fees .................... 49

     2.   Defendants' Recorded Payments ............. 50

     3.   Interest Accrued on Defendants' Unpaid Franchise
          Fees ...................................... 52

     4.   Liquidated Damages ........................ 53

     5.   Lost Profits .............................. 53

        6.    Attorneys' Fees ............................. 54

        7.    Summary ..................................... 58

III. CONCLUSION .......................................... 59

**HILLMAN, District Judge.**

     In this Memorandum Opinion, the Court addresses several
motions filed in two separate but related civil actions, docketed
at 10-cv-4065 and 10-cv-4021.  Currently pending before the Court
are four motions: (1) the Motion for Reconsideration by
Defendants AA Hospitality Northshore, LLC ("AAHN") and Alpesh and
Aruna Patel in Civil Action 10-cv-4065;(2) Plaintiff Red Roof
Franchising LLC, Inc.'s ("RRF") Motion For An Order Determining
Amount Due and Entering Final Judgment in Civil Action 10-cv-
4065; (3) the Motion for Reconsideration by Defendants AAHN and
Asvin and Aruna Patel in Civil Action 10-cv-4021; and (4) RRF's
Motion For An Order Determining Amount Due and Entering Final
Judgment in Civil Action 10-cv-4021.[1]  For the reasons that
follow, Defendants' Motions for Reconsideration in both civil
actions will be denied, and Plaintiff's Motions For An Order
Determining Amount Due and Entering Final Judgment will be

_____

     [1]  In conjunction with their Responses in Opposition to
RRF's Motions Determining Amount Due and Entering Final Judgment
in both civil actions, Defendants move for reconsideration of the
Court's June 28, 2012 Opinions and Orders awarding summary
judgment in Plaintiff's favor on the breach of contract claims.
Although their reconsideration motions are briefed and docketed
within their opposition papers, they are actually separate
motions.  Accordingly, the Court treats them as such.

granted in part and denied in part in both civil actions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The full factual background of this case is familiar to all relevant parties and the Court, and is detailed in the Court's prior Opinions.  The Court therefore only briefly discusses the facts and procedural history relevant to the instant motions.

This matter involves an alleged breach of two separate Red Roof Inn franchise agreements entered into between RRF and various members of the Patel family.  The first franchise agreement was entered into between RRF and Asvin and Aruna Patel related to the operation of a RRF hotel in Bellmawr, New Jersey. The legal action stemming from the alleged breach of this franchise agreement is docketed at 10-cv-4065.  The second franchise agreement was entered into between RRF and Alpesh and Aruna Patel related to the operation of a RRF hotel in Duluth, Minnesota.  It appears from the record that Asvin Patel is Alpesh Patel's father.[2]  The legal action related to the alleged breach of the Minnesota franchise agreement is docketed at 10-cv-4021. Both cases involve largely similar factual scenarios and the complaints in both legal actions contain nearly identical claims and counterclaims.[3]  Furthermore, since the filing of the initial

_____

[2]  It remains unclear whether Aruna Patel is the same individual in both cases.

[3]  For purposes of clarity, the Court notes that Defendants' counterclaims against RRF in Civil Action 10-cv-4065 are based on

complaints, both legal actions have reflected essentially mirrored dockets, complete with the filing of virtually identical motions and briefing, and representation by the same counsel.

**A.    Factual Background Related to Civil Action 10-cv-4065**

On August 23, 2002, Asvin and Aruna Patel entered into a written franchise agreement with RRF's predecessor, Red Roof Inns, Inc., to operate a hotel in Bellmawr, New Jersey.  On March 1, 2005, Red Roof Inns assigned its rights and obligations under the franchise agreement to Accor Franchising North America, LLC ("Accor").  On June 20, 2007, Accor assigned its rights and obligations under the franchise agreement to Plaintiff RRF.

On June 13, 2006, the Patels assigned their interest in the franchise agreement to Defendant AAHN through a written transfer assignment and consent.  The Patels also executed a guarantee, indemnification, and acknowledgment at this time, according to which they guaranteed the performance of AAHN's obligations. Subsequently, AAHN fell behind in payments it owed to RRF and defaulted under the terms of the franchise agreement.  On January 19, 2010, RRF sent a notice of default to Defendants, indicating that they were in default and had the opportunity to cure by March 26, 2010.  Defendants failed to do so, and RRF therefore sent them a notice of termination on April 10, 2010.

---

the New Jersey Franchise Practices Act, and its counterclaims in Civil Action 10-cv-4120 are based on the Minnesota Franchise Act. in

On August 9, 2010, Plaintiff RRF filed a Complaint in this Court, asserting three counts against Defendants: (1) breach of contract based on the franchise agreement; (2) breach of contract based on the guarantee agreement; and (3) specific performance related to the removal of Red Roof Inn signs and marks and continued use of its proprietary and confidential information. On October 17, 2011, Plaintiff moved for partial summary judgment on the breach of contract claims, which the Court granted on June 28, 2012.  In granting summary judgment on the breach of the franchise agreement claim, the Court specifically stated as follows:

> Defendants argue that the calculation of damages does not take into consideration the payments made by them, and does not indicate the type of fee.  Defendants' dispute over the amount of damages, however, does not challenge the fact that RRF incurred damages as a result of the breach.  Given that RRF has established that it incurred damages, it is entitled to partial summary judgement on its claim of breach of the franchise agreement.  However, the Court agrees that plaintiff must provide a full and complete accounting of damages, including a breakdown by type of fee charged and history of payments made by defendants. Accordingly, plaintiff shall file a separate motion for award of damages in keeping with this Opinion.

On July 27, 2012, Plaintiff RRF filed the present Motion Determining Amount Due and Entering Final Judgment, in which it seeks $236,909.88 in damages.  Defendants responded in opposition on August 31, 2012.  Subsumed within their Response in Opposition, Defendants move for reconsideration of the Court's entry of summary judgment in Plaintiff's favor on the breach of

franchise agreement claim.  Plaintiff replied on September 17, 2012, thereby making this matter ripe for judicial consideration.

**B.   Factual Background Related to Civil Action 10-cv-4120**

Similar to the above-discussed civil action, Alpesh and Aruna Patel operated a Red Roof Inn in Duluth, Minnesota.  In 2007, the Patels assigned their interest in the franchise to Defendant AAHN.  On April 9, 2007, AAHN entered into a written franchise agreement with Accor for a term of five years.  Also on this day, the Patels executed a guarantee, indemnification and acknowledgment under which they guaranteed the performance of AAHN's obligations under the franchise agreement.  On June 30, 2007, Accor assigned its rights and obligations under the franchise agreement to Plaintiff RRF.  Subsequently, on July 1, 2010, AAHN ceased operating the franchise as a Red Roof Inn and started operating as an "America's Best Value Inn."  On July 2, 2010, RRF sent written notice to Defendants advising them of termination of the franchise agreement, effective July 6, 2010, as a result of default due to abandonment.

On August 11, 2010, RRF filed suit against Defendants, asserting the same three claims that were filed in Civil Action 10-cv-4065.  On October 17, 2011, RRF filed a summary judgment motion likewise seeking judgment on the two breach of contract claims.  On June 28, 2012, the Court granted summary judgment in RRF's favor, but once again noted that the record was unclear

7

with respect to the precise amount of damages.  The Court
therefore instructed Plaintiff to file a separate motion for an
award of damages, in which it was to provide a "full and complete
accounting of [its] damages."  RRF filed such a motion on July
27, 2012, alleging that it is entitled to a monetary judgment
against Defendants in the amount of $191,444.93.  Defendants
responded in opposition on September 2, 2012.  Once again, just
as in their opposition papers filed in Civil Action 10-cv-4065,
Defendants have included a reconsideration request of the Court's
prior Opinion and Order within their response to Plaintiff's
Motion.  RRF filed a reply brief on September 17, 2012, in which
it urges the Court to deny Defendants' reconsideration motion and
requests additional attorneys' fees.  Accordingly, this matter is
likewise ripe for judicial consideration at this time.

## II.  DISCUSSION

Presently before the Court are Plaintiff's Motions
Determining Amount Due and Entering Final Judgment in both Civil
Actions 10-cv-4065 and 10-cv-4021.  Likewise before the Court are
Defendants' Motions for Reconsideration in both actions.  The
Court will first consider the issues presented in Civil Action
10-cv-4065, followed by an analysis of the issues in Civil Action
10-cv-4120.  Moreover, because a ruling on Defendants'
reconsideration motions affects the analysis of Plaintiff's
Motions, the Court considers the merits of Defendants'

8

reconsideration requests in both actions first.

**A.   Defendants' Motion for Reconsideration in Civil Action 10-cv-4065**

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration.  See Harrison v. Smith, No.Civ.A.08-3050, 2010 WL 715666, at *2 (D.N.J. Feb. 24, 2010) (citing United States v. Compaction Sys. Corp., 88 F.Supp.2d 339, 345 (D.N.J. 1999)).  Such motions are generally treated as motions to alter or amend the judgment of the court pursuant to Rule 59(e), or as motions for relief from the court's judgment or order under Rule 60(b).  See Harrison, 2010 WL 715666 at *2.  In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(I).  Bowers v. Nat'l Collegiate Athletics Assoc., 130 F. Supp. 2d 610, 612 (D.N.J. 2001).  That Rule provides as follows:

> [A] motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge[.] A brief setting forth concisely the matter or controlling decisions which the party believes the Judge [] has overlooked shall be filed with the Notice of Motion.

L. Civ. R. 7.1(I).

As an initial matter, Defendants' Motion utterly fails on procedural grounds, as they blatantly do not adhere to the requirements set forth by Local Rule 7.1.  See United States v. Pechiney Plastics Packaging, Inc., No. Civ.A.09-5692, 2012 U.S. Dist. LEXIS 114255, at *11 (D.N.J. Aug. 14, 2012) (noting the

"stringent standards" provided by Local Rule 7.1).  First, Rule 7.1 states that motions seeking reconsideration must be made within 14 days of entry of the Court's initial order.  The Court entered its initial Opinion and Order granting summary judgment in Plaintiff's favor on June 28, 2012.  Defendants, however, did not file their reconsideration motion until 64 days later on August 31, 2012.  As such, Defendants' Motion is significantly untimely.[4]  Secondly, in their reconsideration request, Defendants did not specifically set forth "the matter or controlling decisions" which they believe the Court "overlooked."  Indeed, other than cursorily alleging throughout their brief that reconsideration is necessary under the present circumstances, Defendants have not provided a single legal citation to support their argument.  Thirdly, rather than filing a separate motion seeking reconsideration, Defendants commingle their reconsideration request with their arguments in opposition to RRF's Motion Determining Amount Due and Entering Final Judgment,[5]

---

[4]  We note that at the summary judgment stage of proceedings, Defendants made much of the fact that Plaintiff filed an affidavit annexed to its reply papers one day late.  In fact, Defendants went so far as to file a motion to strike the affidavit partially based on the fact that it was untimely.  Defendant's own untimeliness is unexplained.

[5]  Had Defendants properly filed their Motion for Reconsideration as a submission independent of their Response in Opposition, they would of course have been required to abide by the procedures set forth in Local Civil Rules 7.1 and 7.2 detailing motions practice before this Court.

10

thereby placing the Court in the difficult position of attempting to extrapolate their purported basis for reconsideration and relief.

In any event, even if Defendants' Motion complied with all the procedural requirements set forth by the Local Rules, it would nonetheless fail on substantive grounds. A motion for reconsideration is "a device to relitigate the original issue decided by the district court, and [is] used to allege legal error." Dermo v. Isaacson, No. Civ.A.11-06520, 2012 WL 4207179, at *1 (E.D. Pa. Sept. 19, 2012) (internal citations and quotation marks omitted). It is not, however, an opportunity for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment. See Bapu Corp. v. Choice Hotels Int'l, Inc., No. Civ.A.07-5938, 2010 U.S. Dist. LEXIS 135844, at *6 (D.N.J. Dec. 23, 2010)(citing P. Schoenfeld Asset Mngmt. LLC v. Cendant Corp., 161 F.Supp.2d 349, 352 (D.N.J. 2001)); Kelly v. Hendricks, No.Civ.A.03-2536, 2006 U.S. Dist. LEXIS 3494, at * 5 (D.N.J. Jan. 27. 2006)(further citations omitted) ("[R]econsideration is not to be used as a means of expanding the record to include matters not originally before the court."). In order to prevail on a reconsideration motion, the movant has the burden of demonstrating one of the following:

> (1) An intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest

11

injustice.

Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  The standard for reconsideration is high, and such motions are granted only sparingly.  See Dermo, 2012 WL 4207179 at *2; Harrison, 2010 WL 715666 at *2.  Thus, a party's difference of opinion with the court's initial decision should be dealt with through the normal appellate process.  Bowers, 130 F.Supp.2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Med. Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); NL Indus., Inc. v. Comm. Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tishcio v. Bontex, Inc., 16 F.Supp.2d 511, 532 (D.N.J. 1998) (internal citation omitted).

At the summary judgment stage of proceedings, Defendants argued that Plaintiff, rather than Defendants, breached the franchise agreement first by refusing to disclose underlying invoices to the franchisees, thereby preventing them from making timely payments.  (See e.g., Docket No. 33, Defs.' Resp. Opp'n to

Pl.'s Mot. Summ. J. at 3-4. ("[T]here are [] potential 'black holes' of charges and expenses that might or might not have been charged to the Patels under their franchise agreement that cannot be identified without explicit invoicing methods. . . . [and] Courts have not hesitated to deny a summary judgment request when the movant has failed to provide backup documentation or explanation to support its breach of contract claim.").)  In ruling on the summary judgment motion, the Court conducted a detailed analysis of Defendants' claim, and found that "the most that defendants have alleged regarding these complaints is a dissatisfaction with RR[F].  They have not shown that RRF has breached the franchise agreement."  (Docket No. 52, 06/28/12 Mem. Op. at 20.)  With respect to Defendants' specific argument that the failure to provide underlying invoices constituted a breach, the Court noted that "[a]lthough not technically a breach of Section 3 of the franchise agreement, RRF would have a duty to provide supporting documentation of its invoices.  This complaint appears to now be moot given the declaration of Joy Purvis attaching the underlying invoices."  (Id. at 20 n.6.)[6]  The Court

---

[6]  Although not disputed by either party, nor directly stated by the Court in its initial Opinion, the Court presently notes that the invoices attached to the Joy Purvis affidavit in Civil Action 10-cv-4065 relate to the RRF franchise in Duluth, Minnesota, while the invoices attached to the Purvis affidavit in Civil Action 10-cv-4021 relate to the RRF franchise in Bellmawr, New Jersey.  It appears that Plaintiff has unintentionally switched the applicable underlying invoices — the New Jersey invoices should be filed in Civil Action 10-cv-4065 and the

went on to find that, even if the complaints did equate to a
breach of the franchise agreement on Plaintiff's part,
Defendants' claim nonetheless failed because a non-breaching
party may not stop performance while continuing to take advantage
of a contract's benefits — an action which the Court found
Defendants did under the facts presented by the record.  (See id.
at 21.)

Defendants now request the Court to reconsider its findings
related to RRF's potential breach of the franchise agreement.
More specifically, Defendants argue that:

> RRF's very belated (during the summary judgment phase of
> litigation) production of the underlying invoices
> conclusively demonstrate thatDefendants [*sic*], all along,
> were justified in suspecting thatRRFhad [*sic*] been
> invoicing charges that were unpermitted [*sic*] under the
> franchise agreement. . . . RRFcompounded [*sic*] its
> wrongdoing bylaterrefusing [*sic*] to provide the
> supporting documentation for those expenses. . . . Had
> RRF properly disclosed the underlying invoices to
> Defendants when they were requested years before the
> present litigation, Defendants would have known exactly
> which charges were legitimate and which ones were
> illegitimate, and could have properly issued payment for
> the correct amount of franchise fees.

(Defs.' Mot./Resp. Opp'n at 1-2.)

Defendants have not predicated their reconsideration request
on any of the three scenarios set forth by the Third Circuit in

---

Minnesota invoices should be filed in Civil Action 10-cv-4021.
The Court is able to discern this error and considers the
appropriate invoices in conjunction with the proper docket.  The
parties, however, are directed to exercise more caution in the
filing and review of their submissions.

Max's Seafood,[7] but rather appear to rehash the original argument

_____

[7] Affording Defendants' Motion a liberal reading, the only plausible possibility under these circumstances would be the "availability of new evidence" scenario.  This Court has previously held, however, that, "[a]bsent unusual circumstances, [the] court should reject new evidence which was not presented when the court made the contested decision.  A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing." Corwin v. Brandywine Valley Friends of Old Time Music, Inc., et al., No. Civ.A.05-4239, 2008 U.S. Dist. LEXIS 29309, at *4 (D.N.J. Apr. 9, 2008) (Hillman, J.) (internal citations omitted).

Here, Defendants claim that RRF failed to provide them with the itemized invoices during the term of the franchise agreement, and did not disclose this evidence until after suit was filed. Defendants have not shown, however, that this evidence was unavailable or unknown to them at the time that they submitted their briefing opposing Plaintiff's request for summary judgment. To the contrary, Mr. Patel admits in his own declaration that this information was disclosed to him during discovery: "*As part of the discovery process* . . . RRF has finally provided the itemized invoices that I have been requesting for years."  (See Patel Decl. ¶ 10.)  Given that this evidence was unveiled during discovery, Defendants were free to utilize it in their opposition papers.  If Defendants perceived a need for additional evidence or documents, they were likewise free to request it from RRF during the discovery process.  They may not, however, do so at this stage of the proceedings.

Furthermore, Plaintiff has attached to its latest Motion copies of checks the Patels sent to RRF during the franchise term referencing specific invoice numbers.  (See Pl.'s Mot., Ex. B.) These checks indicate that the RRF invoices were previously available to the Patels, and cut against any argument that such evidence was previously unavailable or unknown to them.

Moreover, to the extent Defendants base their motion for reconsideration upon new evidence submitted by Plaintiff in connection with its present Motion Determining Amount Due and Entering Final Judgment, the Court notes that it ordered RRF to file such a motion and in it provide a full and complete accounting of its damages.  The law is clear that the burden of proving that reconsideration is necessary falls on the "party seeking to introduce new evidence on reconsideration." Corwin, 2008 U.S. Dist. LEXIS 29309 at *4 (emphasis added).  Here, RRF is not the party seeking to introduce new evidence for reconsideration purposes, but rather has merely provided this

they made at the summary judgment stage of proceedings — that

Plaintiff, rather than Defendants, breached the franchise

agreement first by refusing to disclose underlying invoices to

the franchisees.[8]  The Court already

---

information in conjunction with its present Motion.  Accordingly,
any attempt at reconsideration made by Defendants based upon this
allegedly new evidence would be misplaced.

    Finally, even if the Court were to grant Defendants' request
for reconsideration, their argument would still fail because, as
expressed in the Court's initial Opinion, any alleged breach by
RRF did not excuse Defendants from performance under the contract
while they continued to benefit from its terms.

    [8]  The Court acknowledges that one could plausibly infer
from Defendants' papers that its argument that RRF breached the
franchise agreement first is presently based on a new allegation:
that RRF breached the agreement by overbilling franchisees
through the use of hidden fees.  To the extent that Defendants
attempt to base their reconsideration motion on this new
allegation, this constitutes a new argument and is outside the
scope of a proper motion for reconsideration.  See United States
v. Pechiney Plastics Packaging, Inc., No. Civ.A.09-5692, 2012
U.S. Dist. LEXIS 114255, at *11 (D.N.J. Aug. 14, 2012).

    Further, there is nothing in the record which indicates that
Defendants were precluded from raising this argument during the
summary judgment stage of proceedings.  To the contrary,
Defendants have attached to their brief a copy of an itemized
invoice from the franchise term depicting an alleged "bogus
billing," but which also contains a handwritten note on it
stating that the invoice was "OK TO PAY 4-14-9."  (Defs.'
Mot./Resp. Opp'n, Ex. 5, Doc. 48-11.)  Such a message presumably
written by a member of Defendants' staff is inconsistent with its
present argument that it did not receive the itemized invoices
until relatively recently.

    Defendants' argument is further undermined by information
submitted by RRF in conjunction with its latest Motion for An
Order Determining Amount Due and Entering Final Judgment.  RRF
provides its Applied Receipts Register for 2009-2010, which
documents payments made by Defendants during that time period.
RRF also attaches a declaration from its Treasurer, Mr. Joseph
Merz, attesting to the contents of the Register and swearing
under penalty of perjury that the information contained therein
is true and correct.  The Register indicates that Defendants paid
Invoice Nos. 216724 and 221121 in 2009.  At present, Defendants

considered this argument.  The law in this District is clear that "[a] motion for reconsideration is improper when it is used to ask the Court to rethink what it had already thought through — rightly or wrongly."  <u>Fishbein Fam. P'ship v. PPG Indus.</u>, No Civ.A.93-653, 1994 U.S. Dist. LEXIS 18812, at *3 (D.N.J. Dec. 28, 1994)(internal quotation marks & citations omitted); <u>Nelson v. Borgata Hotel Casino & Spa</u>, No. Civ.A.05-5705, 2007 U.S. Dist. LEXIS, at *2 (D.N.J. Oct. 23, 2007) (Simandle, J.) ("Reconsideration is not warranted when the moving party simply recapitulates the cases and arguments considered by the court prior to rendering its initial decision.")(internal citation omitted).  Defendants cannot merely recycle their original argument in the guise of a motion for reconsideration.

---

attach these two invoices to their brief as examples of invoices depicting "bogus billings" or invoices not previously received. However, the fact that the Register indicates that these two invoices were received and paid by Defendants in 2009 seriously calls into question Defendants' argument.

    Accordingly, the record in this case indicates that Defendants' present argument that RRF breached the contract first by over-billing its franchisees is a new argument that could have been — but was not — raised at the summary judgment stage of proceedings.  It is well established in this District that "[m]otions for reconsideration are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." <u>Fellenz v. Lombard Inv. Corp.</u>, 400 F.Supp.2d 681, 683 (D.N.J. 2005); <u>see also</u> <u>Corwin</u>, 2008 U.S. Dist. LEXIS 29309 at *4 (Hillman, J.); <u>Jeffreys v. New Jersey</u>, No. Civ.A.07-3940, 2008 U.S. Dist. LEXIS 15915, at *5 (D.N.J. March 3, 2008) (Bumb, J.); <u>Perry v. Miner</u>, No. Civ.A.05-4780, 2006 U.S. Dist. LEXIS 60572, at *5 (D.N.J. Aug. 10, 2006) (Kugler, J.).  Accordingly, the Court declines to reconsider its initial ruling in light of Defendants' new argument.

Accordingly, the Court declines to reconsider its prior findings
related to RRF's alleged prior breach of the franchise
agreement.[9]

## B.   Plaintiff's Motion For An Order Determining Amount Due and Entering Final Judgment in Civil Action 10-cv-4065

On June 28, 2012, the Court entered an Order awarding
summary judgment in Plaintiff's favor on its breach of contract
claims and dismissing Defendants' counterclaims.  In granting
summary judgment, the Court indicated that RRF was entitled to
recover monetary damages, but noted that the evidentiary record
was unclear as to the precise damages amount.  The Court
therefore instructed RRF to file a motion for an award of damages
and attorneys' fees no later than July 27, 2012, in which it was
to "provide a full and complete accounting of damages, including
a breakdown by type of fee charged and history of payments made
by defendants."  RRF filed the instant Motion before the Court on
this date, to which Defendants responded in opposition on August

---

[9]   Moreover, even if the Court were to reconsider its prior
findings and hold that the failure to disclose the underlying
invoices constituted a breach, such a finding still would not
change the fact that Defendants continued to take advantage of
the contract's benefits after RRF's purported breach.  As the
Court made clear in its initial Opinion, even if RRF had breached
the contract first, the law unequivocally provides that the non-
breaching party may not stop performance of the contract while
continuing to take advantage of its benefits.  See Ramada
Worldwide, Inc. v. Hotel of Graylong, Inc., No. Civ.A.08-3845,
2010 WL 2674460, at *9 (D.N.J. June 30, 2010) (internal citations
omitted).  As such, Defendants' claim would fail regardless of
whether or not the Court reconsiders its findings regarding the
alleged failure to disclose the underlying invoices.

18

31, 2012.  RRF filed a reply on September 17, 2012, in which it
asserted that it has incurred additional counsel fees in
responding to Defendants' opposition papers.  Accordingly, RRF
presently submits to the Court that it is entitled to:

    (1) $58,697.00 in unpaid franchise fees, costs, royalties,
    and accrued interest,
    (2) $112,109.87 in liquidated damages and accrued interest,
    and
    (3) $66,103.01 in attorneys' fees,

for a total damages award of $ 236,909.88.

    Defendants respond that RRF failed to abide by the Court's
June 2012 Order because its account of damages is neither
complete nor correct.  More specifically, Defendants contend that
RRF only submitted invoices from 2009 onward, despite the fact
that the franchise term began in September of 2007.  Defendants
argue that this intentional withholding of pre-2009 invoices
demonstrates Plaintiff's intent to overcharge them.  Defendants
further allege that RRF has not established the legitimacy of
many of its claimed damages, and that its submitted account of
damages is intentionally disorganized so as to mask its true
intent to overcharge them.  Moreover, Defendants assert that
RRF's calculation of its unpaid franchise fees is incorrect
because it did not properly record payments made by them and
improperly billed them for certain fees.  Finally, Defendants
contend that Plaintiff's calculation of liquidated damages is
incorrect because late fees and interest accrual do not apply to

19

the total damages amount.

### 1.   Damages for Unpaid Franchise Fees

#### a.   Defendants' Claims that Plaintiff's Accounting of Damages is Incomplete

Defendants first argue that RRF's accounting of damages is incomplete because RRF has only provided invoices from 2009 onward, despite knowing that Defendants believed they were improperly charged throughout the entirety of the franchise term, which began in September of 2007.  Plaintiff responds that it did not submit these invoices because they are irrelevant to its calculation of damages.

As indicated by the evidentiary record, RRF has alleged that AAHN was in arrears on payments of franchise fees as of December 15, 2009.  RRF therefore sent notices of default and termination to Defendants in late 2009 and early 2010.  When Defendants failed to cure the default, RRF terminated the franchise agreement on April 20, 2010.  Thus, any such damages that RRF incurred in this respect occurred in 2009 and 2010.  Therefore, the Court agrees with Plaintiff that the submission of pre-2009 invoices is unnecessary under these circumstances.[10]

---

[10]   In conjunction with their argument that Plaintiff's submitted damages account is incomplete because it did not submit pre-2009 invoices, Defendants likewise argue that RRF's intentional withholding of these invoices is evidence of its true intent to overcharge them.  As indicated above in Footnote 9, Defendants' claim that RRF intentionally over-billed them is an argument which could have been — but was not — raised at the summary judgment stage of proceedings.  Accordingly, the Court

Defendants also assert that RRF failed to abide by the Court's previous Order because it did not provide a breakdown by type of fee charged.  More specifically, Defendants contend that RRF's submission intentionally lacks organization and clarity in order to make it more difficult to identify duplicate charges and hidden fees.  In its June 2012 Order, the Court did not indicate that Plaintiff was required to utilize any particular method of organization, but rather left it to RRF's discretion to "provide a full and complete accounting of [its] damages, including a breakdown by type of fee charged and history of payments made[.]"  At present, Plaintiff has submitted several documents in support of its sought damages award.  In Exhibit A, Plaintiff has provided a copy of its Applied Receipts Register reflecting payments made by Defendants to RRF between August 2008 and September 2010.  These payments are grouped by date, and listed in chronological order.  Exhibit B contains copies of payments Defendants made to RRF by check and credit card.  These payments reference specific invoice numbers from Exhibit A, and appear largely in chronological order.  Exhibit C is an Account Status Report which provides a chronological account of all of Defendants' unpaid invoices.  Exhibit D includes copies of every invoice RRF sent to Defendants between 2009 and 2010, including the paid and unpaid invoices referenced in Exhibits A and C.

---

declines to further opine on this argument with respect to Plaintiff's submitted damages amount.

21

Each submitted invoice contains a line description of the type of fee charged.  Defendants admit that the invoices provided in Exhibit D are not in chronological order, but submit that this was done because of bill number sequencing and that the status of an invoice as "paid" or "unpaid" in Exhibit D can be easily ascertained by cross-referencing it with the invoices provided in Exhibits A and C.

The Court sees no discernible error in Plaintiff's method of organization with respect to its submitted documentation to support its damages claim.  While Defendants may have chosen an alternative method of organization that was, in their view, better structured, Plaintiff's chosen method does not equate to a violation of the Court's previous Order.  As such, the Court declines to give merit to Defendants' assertions that Plaintiff's submitted damages amount is incomplete based on its method of organization.[11]

### b.    Defendants' Claims that Plaintiff's Accounting of Damages is Incorrect

In addition to their claims that Plaintiff's submitted amount of damages is incomplete, Defendants also allege that RRF's calculation of the unpaid franchise fees is incorrect.

---

[11] Defendants also argue that RRF's submitted damages amount is incomplete because it fails to establish the legitimacy of several of its claimed damages.  The Court considers this argument below in conjunction with Defendants' claims that RRF's damages calculation is incorrect because they were improperly charged for several illegitimate fees.

Specifically, Defendants maintain that RRF did not properly record certain payments made by them and impermissibly billed them for miscellaneous fees not permitted under the franchise agreement.

### i.   Defendants' Recorded Payments

Defendants contend that RRF wrongfully failed to account for over $15,000 of credit card payments made by Asvin Patel in December of 2009 in their damages account.  In support of this contention, Defendants attach a copy of Asvin's credit card statement depicting a $5,010.20 payment on December 8, 2009. (See Defs.' Resp. Opp'n, Ex. 56-9.)  As reflected by Plaintiff's Applied Receipts Register, however, RRF recorded this credit card payment and applied it to Defendants' account on December 13, 2009.  Accordingly, this amount will not be deducted from Plaintiff's sought damages.

Defendants likewise contend that RRF did not account for a $10,336.19 credit card payment made by Asvin on December 8, 2009. This payment, however, was made in relation to the related RRF franchise in Duluth, Minnesota.  As such, consideration of this credit card payment is unrelated to the instant case, and the Court will consider it, if need be, in its analysis of Plaintiff's sought damages award in related Civil Action 10-cv-4120.

Defendants further assert that RRF wrongfully failed to

record a $4,358.03 check payment made by Asvin on March 25, 2010. RRF's treasurer, Mr. Joseph Merz, submits in his declaration that he has conducted an extensive search of RRF's deposit ledgers and has found no evidence indicating that RRF ever received such a check payment.  (See Pl.'s Reply, Ex. 59-4, Supp. Decl. of Joseph Merz.)

However, contrary to Plaintiff's assertions that it has no record of such a check deposit, the Court through its own review of the record has found that Plaintiff itself provided a copy of this check — Check No. 07311 — in its own Exhibit B.  (See Doc. 54-3, at page 30 of 33.)  RRF's own documentation indicates that the check was deposited into its account on May 3, 2010.  Exhibit B further indicates that Check No. 07311 was to be applied to invoice numbers 237843, 18118, 82238, 232143, 228544, and 26426. (See id., at page 33 of 33.)  Defendants have likewise submitted a copy of this check attached to Asvin's bank statement, which indicates that it was deposited on May 3, 2010 and his checking account was debited $4,358.03 on this date.  (See Defs.' Resp. Opp'n, Ex. 56-9.)  RRF's Applied Receipts Register in Exhibit A, however, does not reflect a $4,358.03 payment made by Defendants, nor does it reference any of the above listed invoice numbers to which Check No. 007311 was to apply.  To the contrary, all of the above listed invoice numbers are listed as unpaid in Plaintiff's Account Status Report in Exhibit C.  Accordingly, this amount was

24

incorrectly included in Plaintiff's submitted damages amount, and $4,943.80 will be deducted from Plaintiff's calculated damages.[12]

Moreover, although not an issue raised by either party, the Court notes that, in addition to Check No. 007311, Plaintiff has likewise provided in its Exhibit B a copy of Check No. 007312 paid by Defendants in the amount of $126.20.  (See Doc. 54-3, at page 31 of 33.)  Plaintiff's own submission indicates that this check was cashed on May 3, 2010, and was to be applied toward invoice numbers 17502 and 17587.  (See id., at page 33 of 33.) Plaintiff's Applied Receipts Register in Exhibit A reflects that Defendants paid invoice number 17502 in the amount of $36.14. The Register does not, however, indicate that invoice number 17587 has been accounted for.  To the contrary, Plaintiff's Account Status Report in Exhibit C reflects invoice number 17587

---

[12]   The Court deducts $4,943.80 — rather than the $4,358.03 amount indicated in Defendants' check payment — because the check amount reflected credits owed to Defendants at the time of payment, while Plaintiff's submitted damages include the full amount due on the invoices without taking the credits into account.  To be clear, the total amount due to RRF in February 2010 was $4,943.80. [$155.05 (invoice 237843) + $225.12 (invoice 18118) + $4,043.12 (invoice 82238) + $230.00 (invoice 232143) + $69.00 (invoice 228544) + $221.51 (invoice 26426) = $4,943.80.] At this time, Defendants were entitled to two credits on their total payment equaling $585.77. [$406.57 (credit 236108) + $179.20 (credit 26517) = $585.77.] Therefore, the actual amount Defendants owed Plaintiff was $4,358.03. [$4,943.80 − $585.77 = $4,358.03.]  Defendants thus sent Plaintiff Check No. 007311 to rectify payment owed on invoice numbers 237843, 18118, 82238, 232143, 228544, and 26426.  In their proposed damages, however, Plaintiff submits the full $4,943.80 as outstanding payments owed to it.  Therefore,$4,943.80 will be deducted from RRF's damages amount.

as outstanding in the amount of $137.85.  Accordingly, an additional $137.85 will be deducted from Plaintiff's submitted damages amount.[13]

In sum, the Court declines to reduce Plaintiff's sought damages award with respect to approximately $15,000 in credit card payments made by Asvin Patel.  Plaintiff's damages award will, however, be reduced by $5,081.65 to account for its failure to properly record check payments previously made by Defendants.

### ii.  Hardware Monitoring and Maintenance Fees

Defendants argue that the monthly "hardware monitoring and maintenance fee" (hereinafter "hardware fee") that RRF charged the Patels during the franchise term should not be included in the unpaid franchise fees portion of its damages amount.  Defendants contend that they do not know what hardware on their

---

[13]  Similar to the above analysis in Footnote 12, the Court deducts the full amount of damages claimed by Plaintiff, rather than the lesser amount provided by Defendants' check payment. The total amount owed to RRF by Defendants was $173.99. [$36.14 (invoice 17502) + $137.85 (invoice 17587) = $173.99]. Defendants, however, apparently had four outstanding credits totaling $47.79 at this time.  [$6.31 (credit 17743) + $14.23 (credit 17800) + $20.54 (credit 17860) + $6.71 (credit 17919) = $47.79].  Thus, taking the credits into account, the actual amount owed to RRF was only $126.20. [$173.99 - $47.79 = $126.20.]  The record indicates that Defendants paid RRF $126.20 by Check No. 007312.  This payment rectified the amount due on invoice numbers 17502 and 17587.  Plaintiff is therefore precluded from including invoice 17587 in its submitted damages amount at present.  Plaintiff's Account Status Report in Exhibit C, however, lists invoice 17587 as unpaid in the amount of $137.85.  Accordingly, this amount will be deducted from Plaintiff's proposed damages amount.

property was allegedly maintained or monitored by RRF, that they never agreed to such a fee, and that this fee was not authorized under the franchise agreement.[14]  Defendants further argue that, to the extent this monthly hardware fee constituted a "support and maintenance fee" per their software agreement with RRF, such a fee was capped at $1,000 annually.[15]  In response, Plaintiff argues that the hardware fee was permitted under the broadly written terms of Section 5 of the franchise agreement, and that the $1,000 cap only applies to software — not hardware — covered by the agreement.

In contract disputes, the damages suffered by a party are typically remedied by awarding that party the amount of money that would place it in the position it would have enjoyed had the contract not been breached.  See Vino 100, LLC v. Smoke on the Water, LLC, 864 F. Supp. 2d 269, 285 (E.D. Pa. 2012) (citing Atacs Corp. v. Trans World Commc'ns., 155 F.3d 659, 669 (3d Cir. 1998)).  As applied to this case, this means that the Court must first ascertain whether the hardware fee was required under the franchise agreement in order to determine whether Defendants'

---

[14]  Defendants once again argue that RRF breached the franchise agreement because the charging of such a fee was not authorized under the terms of the agreement.  As explained above, the Court has already considered and decided this issue.  Thus, it declines to do so again at this juncture.

[15]  The software license agreement between RRF and the Patels is attached to, and therefore included within, their franchise agreement.

failure to pay the fee can be included in Plaintiff's damages. In other words, RRF did not suffer any damages when the Patels did not pay the hardware fee unless it was a cost Defendants were required to incur under the franchise agreement in the first place.

The starting point in such an inquiry is the language of the contract itself.  If the language of the contract is unambiguous, the court must "construe the contract from its four corners as a matter of law without resort to extrinsic evidence," and should "enforce the contract as written and not [] make a better contract for either of the parties." Glenpointe Assocs. v. Regency Sav. Bank, No. Civ.A.06-1690, 2006 U.S. Dist. LEXIS 74496, at *10-11 (D.N.J. Sept. 25, 2006) (citing Regency Oldsmobile, Inc. v. Gen. Motors Corp., No. Civ.A.87-314, 1988 U.S. Dist. LEXIS 3505, at *10-*11 (D.N.J. Apr. 19, 1988); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)(internal quotation marks & parantheticals omitted)).  Here, Section 4 of the franchise agreement outlines the fee responsibilities of the parties.  Notably, a monthly hardware fee is not mentioned in this Section.  However, Section 5 of the agreement addressing the duties of the franchisee states that:

> Franchisee shall . . . maintain at the property, at its sole cost, all Software, Computer Systems, and equipment necessary to operate and maintain the Computer System and/or data processing systems . . . The foregoing obligation shall include any enhancements, additions, substitutions or other modifications to such Software and

> Computer System and equipment that may be required from
> time to time.  Franchisee shall be responsible for all
> costs incurred in fulfilling its obligations hereunder[.]

(Franchise Agreement § 5.18.)  The franchise agreement goes on to

define "Software" and "Computer Systems."  "Software" is defined

as:

> [T]he Fidelio Property Management System Software
> provided or specified by Franchisor for use in the
> System, including but not limited to, Franchisor's
> proprietary property management software (including the
> accompanying documentation and all future enhancements,
> upgrades, additions, substitutions and other
> modifications) developed for the non-exclusive use by Red
> Roof Inns.

(Id., Schedule 1 to Red Roof Inns Franchise Agreement,

"Definitions.")  The "Computer System," on the other hand, is

defined as:

> [A]ll hardware, Software, and peripheral equipment that
> the Franchisor sells to the Franchisee for the Fidelio
> Property Management System which will run the Software.

(Id.) (emphasis added).  Thus, it is unambiguous from the

contractual language itself that hardware is considered to be

part of the Computer System.  It is also clear that Subsection

5.18 of the agreement explicitly requires franchisees to

"maintain" at their properties "all Computer Systems and

equipment" at their "sole cost."  A monthly hardware fee needed

to maintain the Computer System falls within the scope of this

contractual language.  Accordingly, the hardware fee was

29

permitted under the franchise agreement, and Defendants' failure
to pay it contributed to Plaintiff's overall incurred damages.[16]

The next inquiry for the Court to consider is whether the
hardware fee is subject to the $1,000 cap found in Defendants'
software agreement with RRF, which is incorporated within the
parties' franchise agreement.  Section 2 of the software
agreement governs "software license, support and maintenance
fees" and caps such fees at $1,000 annually. (Franchise
Agreement, Ex. B, Fidelio Software License Agreement § 2.2; Ex. A
to Fidelio Software License Agreement.)  By its own terms, the
"software license, support and maintenance fee" applies to
software, which, as explained above, has its own definition under
the contract and does not encompass hardware.  Accordingly, the
$1,000 cap in the software agreement does not apply to fees
associated with maintenance of hardware encompassed within the
definition of RRF's Computer System, and Plaintiff's damages will
therefore not be limited in this manner.[17]

_____

[16]  Moreover, the record indicates that Defendants actually
paid the hardware fee at various points throughout the franchise
term.  (See Pl.'s Mot, Ex. A, Invoice Nos. 212033, 213143,
219839, 218374, 221486, 222119, 223178.)  As such, it is curious
that they previously chose to pay the fee and did not object to
it at the time they received these invoices, but instead waited
to contest it at this late stage of litigation.

[17]  In this section of their brief, Defendants also argue
that they were wrongfully billed three times for a hardware fee
in December 2009.  The record indicates that RRF did in fact send
Defendants three invoices — Invoice Nos. 226755, 226756, 226757 —
in the amount of $230.00 each for the month of December 2009.
(See Pl.'s Mot, Ex. D.)  However, RRF's Account Status Report —

### iii.        Travel Agent and GDS Fees

Defendants likewise contend that "travel agent and GDS fees"[18] that RRF charged the Patels throughout the franchise term should not be included in the unpaid franchise fees portion of its damages amount.  Defendants contest inclusion of these fees on the grounds that they had an "understanding" with RRF's predecessor that they were not responsible for their payment.

First, Defendants have introduced no evidence to support their purported "understanding" with RRF's predecessor.  Even if such an understanding existed, however, it is irrelevant to the instant matter because the breached franchise agreement at issue here is not an agreement between Defendants and RRF's predecessor.  Rather, it is the binding agreement between Defendants and RRF.  As such, any prior "understanding" with RRF's predecessor is inapplicable here.

Secondly, Subsection 4.5 of the parties' franchise agreement clearly states that:

> Franchisee must reimburse Franchisor for the amounts of
> any travel agency commissions, airline reservation system
> fees, fees associated with the use of other electronic

---

which lists the invoices that remain unpaid by Defendants — only lists Invoice Number 226755 as an outstanding invoice awaiting payment.  (See id., Ex. C.)  As such, given that Plaintiff has not included the other two invoices as outstanding, Defendants' argument on these grounds is essentially moot.

[18]  GDS fees are "global distribution system" commissions paid to third-party service providers of online travel reservations.

> booking systems by guests and other related fees that we
> pay to third parties on Franchisee's behalf in connection
> with reservations for rooms at your Inn.

(Franchise Agreement § 4.5.)  This contractual language is clear
that Defendants were responsible for payment of travel agent and
GDS fees, and that their failure to do so financially injured
RRF.  Accordingly, Plaintiff is entitled to include the unpaid
travel agent and GDS fees in its damages amount.

### iv.  Signature Program Fees

Defendants also assert that the "Signature Program fees"
that RRF charged the Patels should not be included in the unpaid
franchise fees portion of its damages amount.  More specifically,
Defendants maintain that these fees were not authorized under the
franchise agreement.[19]

According to Plaintiff, the Signature Program is a customer
service program in which "mystery shoppers" called RRF franchises
to test customer service levels.  Plaintiff avers that the fees
related to the Signature Program were permitted under Subsection
5.17 of the agreement, which provides that:

> Franchisee shall participate in and comply with the terms
> of all marketing, reservation service, advertising and
> operating programs and policies required by Franchisor
> for the System (including, without limitation, any

---

[19]  On this point, Defendants once again argue that they had
an "understanding" with RRF's predecessor that they would not be
charged for such fees.  For the same reasons discussed above with
respect to travel agent and GDS fees, any such understanding is
inapplicable to the instant dispute.

> Internet advertising and marketing conducted and
> prescribed by Franchisor), the manner directed by
> Franchisor in the Manuals or otherwise in writing. . . .
> Franchisee shall participate in and comply with such
> programs and activities on the same basis as other
> participating Red Roof Inns in the same region as the
> Inn.

(Id. § 5.17.) Subsection 5.17, however, only requires that the

franchisee "participate in and comply with" — as opposed to pay

for — such programs. (Id.) Thus, it is apparent from the

contract's language itself that Defendants were not required to

pay such fees. On this point, Plaintiff argues that the

Signature Program is a type of "training program" covered by

Subsection 5.3 of the contract, which provides that:

> In addition to its initial Manager training program and
> Owner's Orientation program, Franchisor may require
> Franchisee and its employees to attend other training
> courses, programs, conferences and seminars. All training
> shall be provided at such locations as Franchisor may
> designate. Franchisee shall be responsible for all
> expenses incurred by its trainees including tuition costs
> (if any) and the costs of transportation, meals, lodging
> and wages or salary and benefits.

(Id. §§ 5.3.2, 5.3.3.)

Even if the Signature Program could be considered a

"training program," it is not evident from the contract that it

is the type of program that Defendants were required to pay for

under the agreement. There is no indication in the record that

Defendants' employees had to "attend [any] training courses,

programs, conferences and seminars" for the Signature Program.

33

Nor is there any evidence that such training programs actually took place at any location designated by RRF. Finally, Plaintiff has not introduced any evidence to show that the "Signature Program fee" covered any employee tuition costs, transportation, meals, lodging, or wages. In fact, Defendants vehemently deny that their employees ever participated in such a training program.

Therefore, given that Defendants were not required to pay the Signature Program fees under the franchise agreement, it follows that such fees should not be included in Plaintiff's allotted damages amount. The outstanding Signature Program fees that Plaintiff claims are owed to it by Defendants will therefore be deducted from its overall proposed damages amount. In Plaintiff's Account Status Report depicting Defendants' outstanding payments, RRF lists the following seven invoices that include charges for Signature Program fees in the following amounts:

| Invoice Number | Amount |
|---|---|
| 228540 | $72.00 |
| 228541 | $72.00 |
| 228542 | $72.00 |
| 228543 | $69.00 |
| 228544 | $69.00 |
| 236180 | $69.00 |
| 236191 | $46.00 |

34

| Total | $469.00 |
|-------|---------|

(Pl.'s Mot., Ex. C, Account Status Report.)   Accordingly,
Plaintiff's overall damages amount will be reduced by $469.00.

### v.   In-House Management Training Fee

Defendants further claim that the fee RRF charged for an
"in-house management training" program should be subtracted from
Plaintiff's submitted damages amount on the grounds that the fee
is "completely bogus" since this program never took place.
Plaintiff, in turn, asserts that it has not included this fee in
its damages because it references a 2008 charge, and its damages
accrued between 2009 and 2010.  Plaintiff further avers that it
would be prejudiced if Defendants were permitted to proceed with
this claim because they paid the fee in 2008 without protest and
RRF therefore had no reason to retain proof of performance of the
training program in 2012, and that any such claim now would be
time-barred by Subsection 22.5 of the franchise agreement.[20]

---

[20]  Subsection 22.5 of the franchise agreement provides as
follows:

> Franchisor and Franchisee and its Owners irrevocably
> waive trial by jury in any action, proceeding or
> counterclaim, whether at law or in equity, brought by
> either of them against the other.  Any and all claims and
> actions arising out of or relating to this Agreement, the
> relationship of Franchisee and Franchisor, or
> Franchisee's operation of the Inn, brought by either
> party hereto against the other, whether in mediation or
> a legal action, shall be commenced within two (2) years
> from the occurrence of the facts giving rise to such
> claim or action, or such claim or action shall be barred.

Defendants' argument on this point falls short of the mark. As correctly noted by Plaintiff, the instant Motion before the Court refers to an assessment of damages incurred by RRF as a result of the breach of the franchise agreement.  As mentioned above, Defendants defaulted on and terminated the agreement in 2010.  As such, RRF's damages arose at the time of default and termination.  In its Exhibit C, Plaintiff submits a list of fees it charged Defendants between 2009 and 2010 that remain unpaid. Notably, RRF does not include any pre-2009 invoices because they are not within the relevant time frame.  The disputed in-house management training fee was charged in 2008.  The charging of this fee is irrelevant here because: (1) the fee was not incurred during the relevant time period; and (2) the record indicates that Defendants in fact paid this fee.  The fee has not been included in Plaintiff's proposed damages, and Defendants' disagreement with this charge is impertinent to the instant discussion determining Plaintiff's damages.  Defendants have instead stepped outside the boundaries of the instant Motion and raise a completely new argument — that the in-house management training fee is illegitimate and they should never have been charged for it in the first place.  This issue is not before the Court for resolution.[21]  Accordingly, Plaintiff's damages will

_____

(Franchise Agreement § 22.5.)

    [21]  Given that resolution of this dispute surrounding the in-house management training program is inappropriate here, the

36

not be reduced on these grounds.

### vi.   Miscellaneous Other Expenses

Finally, Defendants assert that RRF's damages should be off-set by numerous expenses Defendants incurred as a result of RRF's "incompetence with running a hotel franchise system." (Defs.' Resp. Opp'n at 9.)  In particular, Defendants contend that they began to incur additional monthly charges related to the communications and property management systems at the hotel when RRF purchased the franchise from Accor.[22]

Once again, Plaintiff has not included these allegedly unpaid fees in its submitted damages amount.  Thus, disputes related to these fees and RRF's alleged "incompetence" are irrelevant to resolution of the instant matter, and Plaintiff's damages will not be reduced on this basis.

### c.   Accrued Interest on the Unpaid Franchise Fees

Subsection 4.7 of the franchise agreement provides that, in the instance of an overdue payment, the franchisee shall pay the franchisor "in addition to the amount overdue, a fifty dollar ($50) Late Fee plus interest on such overdue amount from the day

---

Court does not consider either parties' arguments related to the propriety of this fee or actual occurrence of such a program, nor does it take any position on whether or not such a claim is time-barred by the franchise agreement.

[22]  More specifically, Defendants object to charges incurred at the hotel from "Qwest" and "Shift4." (See Defs.' Resp. Opp'n, Ex. A, Decl. of Asvin Patel ("Patel Decl.") ¶ 20.)

it was due until paid at the rate of one and one half percent (1.5%) per month or the maximum rate permitted by law, whichever is less." (Franchise Agreement § 4.7.)  In its Exhibit E, Plaintiff has submitted a chart of the monthly interest payments accrued on Defendants' outstanding obligations to it through July of 2012.[23]  It asserts that it is entitled to $21,310.52 in accrued interest on the outstanding fees and costs owed to it by Defendants under the franchise agreement.

Defendants do not dispute Plaintiff's submitted accrued interest amount.  Nonetheless, Plaintiff's proposed accrued interest calculation must be amended to reflect the Court's instant findings with respect to the unpaid franchise fees and costs, as well as to account for interest accrued as of the date of this Opinion and adjoining Order.  More specifically, Plaintiff's interest calculation must be applied to the new damages amount, which should take into account the Court's deduction of $5,550.65. [$5,081.65 (fees actually paid by Defendants) + $469.00 (Signature Program fees) = $5,550.65.], and should include interest accrued as of the date of this Opinion and Order.  Accordingly, the Court directs Plaintiff to file a new certification pertaining to its proposed damages calculation that reflects these findings and alterations.

---

[23]  July 2012 is the month that the parties submitted their briefing on this matter to the Court.

### 2.   Liquidated Damages

Plaintiff asserts that it is entitled to $75,000.00 in liquidated damages from Defendants, plus $37,109.87 in interest accrued thereon at a monthly rate of 1.5%, for a total liquidated damages award of $112,109.87.  Defendants object to Plaintiff's liquidated damages calculation on the grounds that the liquidated damages provision of the franchise agreement was previously modified by the parties to place a cap on monetary exposure in the event of early termination.  Moreover, Defendants claim that Plaintiff relies on the wrong provision of the contract as the basis for its alleged right to these fees and interest, and that the correct contractual provision does not permit RRF to recover late fees or accrued interest on liquidated damages.

Subsection 13.6 of the franchise agreement governs liquidated damages, and provides that: "If the Agreement is terminated after the first twelve (12) months of operation, Franchisee agrees to pay Franchisor liquidated damages . . . Franchisee shall pay Franchisor the payment specified in this Section 13.6 no later than give (5) days following the termination of this Agreement."  (Franchise Agreement § 13.6.) On August 23, 2002, the franchise agreement was amended by the parties.  With respect to the liquidated damages provision in Subsection 13.6 of the original agreement, the addendum altered that Section as follows:

39

Notwithstanding the provisions in Paragraph 13.6 hereof, Franchisee shall pay Franchisor a lump sum payment . . . equal to the lesser of (1) the average monthly payments required under Section 4 of the Agreement . . . or (2) a fixed sum of seventy-five thousand dollars ($75,000.00); provided, however, that all other provisions of Section 13 relative to procedures for termination shall remain in full force and effect.

(Franchise Agreement, 09/23/02 Addendum, ¶ 4.)

"'[W]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction and the courts must enforce those terms as written.'" Nye v. Ingersoll Rand Co., 783 F.Supp.2d 751, 761 (D.N.J. 2011) (citing City of Orange Twp. v. Empire Mortg. Servs., Inc., 341 N.J. Super. 216, 224 (App. Div. 2001)).  Here, the language in the franchise agreement and 2002 addendum clearly indicate that, in the event that a franchisee prematurely terminated its agreement, the franchisor would be entitled to liquidated damages.  The agreement and subsequent addendum also make clear that the amount of liquidated damages in such instances would be the lesser of either $75,000.00 or the average monthly payments made by the franchisee to the franchisor. Neither party disputes that the $75,000.00 lump sum is the lesser of these two options.  Therefore, given the Court's prior findings at summary judgment that Defendants breached the franchise agreement and the unambiguous contractual language at issue here, the Court finds that Plaintiffs are permitted to

40

include the $75,000.00 liquidated damages lump sum in their
proposed damages amount.

Plaintiff also claims that it is entitled to $37,109.87 in
interest that has accrued on the liquidated damages under the
terms of the franchise agreement.  RRF roots this claim in
Subsection 4.7 of the agreement.  In response, Defendants object
on the grounds that Subsection 4.7 is only applicable to
franchise and marketing fees, and does not apply to liquidated
damages.

Subsection 4.7 provides that:

If any payment due to Franchisor or its Affiliates by
Franchisee is not received before its due date . . .
Franchisee shall pay to Franchisor, in addition to the
amount overdue, a fifty dollar ($50) Late Fee plus
interest on such overdue amount from the day it was due
until paid at the rate of one and one half percent (1.5%)
per month[.]

(Franchise Agreement § 4.7.)  Subsection 4.7 is nested under
Section 4 of the contract governing "Fees."  Section 4 contains
eight subsections, each detailing monthly fee requirements of the
parties.  The first five subsections list specific fees owed by
the parties, including an initial franchise fee (Subsection 4.1),
royalty fees (Subsection 4.2), marketing and reservation fees
(Subsection 4.3), and booking and commission fees (Subsection
4.5).  The final three subsections of Section 4 appear to explain
the manner in which the fees listed in the previous five
subsections would apply under the terms of the franchise

41

agreement, including designation of the office where fee payments should be sent and the bank account where they would be deposited.  The second to last subsection — Subsection 4.7 — states that the franchisor is entitled to late fees and accrued interest for "any monthly payment not actually received [ ] on or before the twentieth (20) day of the month[.]" (Id.)

When interpreting a provision of a contract, courts should begin by examining the text of the disputed provision in the context of the overall document.  Spring Ford Indus. v. Nike Team Sports, Inc., No. Civ.A.05-3788, 2006 U.S. Dist. LEXIS 11784, at *8-9 (E.D. Pa. Mar. 21, 2006) (internal citations omitted).  "In that connection, courts interpret a contract according to its plain language by reading the document as a whole in a fair and commonsense manner so as to match the reasonable expectations of the parties." Princeton Women's Ctr. v. Proselect Ins. Co., No. Civ.A.11-1761, 2011 U.S. Dist. LEXIS 118641, at *12-13 (D.N.J. Oct. 14, 2011) (internal citations & quotation marks omitted).

In affording Subsection 4.7 a "fair and commonsense" reading and interpreting it in the context of the overall contract, it is evident that this subsection only applies to the monthly fee payments detailed in Subsections 4.1 through 4.5.  Although Plaintiff makes much of the fact that Subsection 4.7 begins with the words "[i]f any payment due to Franchisor . . .," (emphasis added), it cannot simply isolate this phrase and utilize it out

42

of context.  The phrase belongs to the overall section of the agreement denoting the monthly fees owed by the parties, and appears amongst language that specifically cross-references other subsections of Section 4. (<u>See e.g.</u>, Franchise Agreement § 4.6 ("The monthly payments required by Sections 4.3 and 4.5 of this Agreement shall be submitted to Franchisor together with all monthly reports required under this Agreement[.]").)  Notably, although the various subsections in Section 4 cross-reference one another, there is no reference to Subsection 13.6 of the agreement governing liquidated damages.  Had the parties intended for the interest and late fee requirement to apply to the liquidated damages provision in Subsection 13.6, they would have specifically indicated this intent as they did for the other fee requirements in Section 4.  By the same token, while Subsection 13.6 references other sections of the contract, it makes no mention of Subsection 4.7, which likewise indicates to the Court that the two subsections are unrelated.  Accordingly, when reading Subsection 4.7 in the context of the entirety of Section 4, it is clear that the interest and late fees in this Subsection only apply to the overdue fees previously listed in that Section.  Thus, Plaintiff may only include $75,000.00 of liquidated damages in its damages calculation, and may not include any late fees or interest accrued thereon in its proposed amount.

### 3.  Attorneys' Fees

In its Motion For An Order Determining the Amount Due and Entering Final Judgment, Plaintiff avers that it is entitled to $58,298.01 in attorneys' fees.  After Defendants filed their Response in Opposition to Plaintiff's Motion, RRF filed a subsequent brief and adjoining affidavit indicating that it has since incurred an additional $7,805.00 in attorneys' fees for services rendered related to researching and responding to Defendants' response brief.  Thus, RRF presently seeks attorneys' fees totaling $66,103.01.

"The Third Circuit has made clear that a district court may not sua sponte reduce a fee award from the amount requested in the fee petition."  N.V.E., Inc. v. Palmeroni, No. Civ.A. 128319, 2012 U.S. Dist. LEXIS 128319, at *17 (D.N.J. Sept. 10, 2012) (citing Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir.2005); Weed-Schertzer v. Nudelman, et al., No Civ.A.10-6402, 2011 U.S. Dist. LEXIS 108928, at *7 (D.N.J. Sept. 23, 2011)) (internal parentheticals omitted).  Here, Defendants have opposed neither Plaintiff's original claim for attorneys' fees, nor its subsequent amended request for an increased amount. The Court therefore lacks authority to deny Plaintiff its requested amount of attorneys' fees.  Accordingly, Plaintiff is entitled to include $66,103.01 in its proposed damages calculation.

**4.   Summary**

44

In summary, Plaintiff requests $236,909.88 in damages related to Civil Action No. 10-cv-4065. Of this total amount, Plaintiff requests $58,697.00 in damages for unpaid franchise fees, costs, royalties and interest accrued thereon. $37,386.48 of this amount is allocated to unpaid franchise fees, costs, and royalties, and the remaining $21,310.52 is apportioned to interest accrued on these outstanding payments through July of 2012. With respect to the amount claimed by RRF for damages incurred as a result of unpaid franchise fees, costs, and royalties, that amount should be reduced as follows: (1) $5,081.65 for failure to properly account for check payments previously made by Defendants; and (2) $469.00 for Signature Program fees. Accordingly, Plaintiff is entitled to recover $31,835.83 in damages for unpaid fees, costs, and royalties [$37,386.48 – ($5,081.65 + $469.00) = $31,835.83]. As to the interest accrued on these damages, Plaintiff is directed to file a supplemental certification depicting the proper interest calculation when considering the reduced damages total and time that has lapsed since its last submission.

Plaintiff also avers that it is entitled to $112,109.87 in liquidated damages. Based on the above discussion, the Court finds that Plaintiff is entitled to recover the $75,000.00 liquidated damages lump sum provided by the franchise agreement, but is not permitted to recover any interest accrued on this

45

amount.

Finally, Plaintiff further requests an attorneys' fee award
of $66,103.01.  Given that Defendants have not opposed this
request, the Court permits RRF to include this sum in their
overall damages account as well.

### C.   Defendants' Motion for Reconsideration in Civil Action 10-cv-4021

Just as in Civil Action 10-cv-4065, Defendants move for
reconsideration of the Court's initial Opinion and Order entered
on June 28, 2012.  Once again, rather than filing a separate
motion, Defendants have subsumed their reconsideration request
within their response in opposition to Plaintiff's Motion For An
Order Determining Amount Due and Entering Final Judgment.  In
fact, Defendants' reconsideration motion is word-for-word
identical in both Civil Actions.  Therefore, rather than rehash
issues that have already been considered by the Court both at
summary judgment and at present, the Court will deny Defendants'
instant Motion for Reconsideration in Civil Action 10-cv-4021 for
the same reasons it articulated above in Part II: Section A with
respect to Civil Action 10-cv-4065.

### D.   Plaintiff's Motion For An Order Determining Amount Due and Entering Final Judgment in Civil Action 10-cv-4120

The Court begins its analysis of Plaintiff's Motion by
noting the vast factual and legal similarities between Civil
Actions 10-cv-4065 and 10-cv-4120.  With respect to factual

similarities, the only highly relevant factual difference between
the two cases is that Alpesh and Aruna Patel operated a RRF hotel
in Duluth, Minnesota in 10-cv-4120, while Asvin and Aruna Patel
operated a similar hotel in Bellmawr, New Jersey in 10-cv-4065.
The franchise agreements at issue in both cases are nearly
identical linguistically.  Further, the claims initially brought
by Plaintiff and adjudicated at summary judgment were also
largely the same in both actions.  Given the high degree of
similarity, the issues in both cases often overlap and the
parties therefore have repeated several of the arguments — often
word-by-word — in Civil Action 10-cv-4021 that they made in Civil
Action 10-cv-4065.  Thus, to the extent that a present issue
overlaps with one discussed above, the Court will not engage in
an extensive analysis of it so as to avoid repetition and
duplicity.

        In Civil Action 10-cv-4120, RRF requests a monetary judgment
against Defendants in the amount of $197,569.93.  Specifically,
Plaintiff avers that it is entitled to:

        (1) $84,671.86 in unpaid franchise fees and accrued
        interest,
        (2) $82,419.44 in lost profits, and
        (3) $30,478.63 in attorneys' fees.

        In response, Defendants assert that RRF failed to abide by
the Court's June 2012 Order because its provided account of
damages incurred is neither complete nor correct.  With respect
to the former argument, Defendants assert that Plaintiff's

account of its damages is incomplete because RRF only submitted invoices from 2009 onward, despite knowing that the franchise term began in September of 2007, and that its submitted account of damages is intentionally disorganized so as to mask RRF's true intent to overcharge them.  These are the precise arguments previously made by Defendants in Civil Action 10-cv-4065.  In fact, Defendants' briefing of these arguments is identical.  Therefore, for the reasons articulated above, the Court will not engage in an extensive discussion of these points and declines to reduce the damages calculation on this basis.

Defendants further argue that Plaintiff's calculated damages resulting from unpaid franchise fees are incorrect because it failed to record specific payments made by the Patels and improperly billed for certain fees.  Defendants also object to RRF's alleged calculation of its liquidated damages.

Defendants have once again repeated the arguments they made in Civil Action 10-cv-4065 on the basis that they were improperly billed for hardware monitoring and maintenance fees, travel agent and GDS fees, in-house management training, and other expenses.  Given that the two franchise agreements at issue here are — for all intents and purposes — the same, the Court finds that Plaintiff may include unpaid invoices for hardware monitoring and maintenance fees, travel agent and GDS fees, in-house management training, and other expenses in its total damages calculation for

48

the same reasons articulated above.[24]  The Court will, however, discuss Plaintiff's claims for unpaid Signature Program fees and RRF's alleged failure to include certain payments in their damages calculation.  Moreover, the Court analyzes Plaintiff's claims for liquidated damages, lost profits, and attorneys' fees below.

### 1.    Signature Program Fees

Similar to the arguments above, Defendants object to the inclusion of unpaid invoices for Signature Program fees in their damages calculation on the basis that such fees were not permissible under the agreement.  Plaintiff, on the other hand, avers that the fees were permissible under the broad language of Subsections 5.15 and 5.3 of the contract.  In particular, in its Account Status Report detailing outstanding payments owed to it by Defendants, Plaintiff includes the below invoices in the following amounts as unpaid Signature Program fees:

---

[24]  Defendants attach copies of several invoices for hardware maintenance and monitoring fees, travel agent and GDS fees, and charges for an in-house management training program to their opposition papers as evidence of RRF's alleged "bogus billing" practices.  (See Defs.' Resp. Opp'n, Exs. 4, 6, 7 & 8.)  In addition to these charges being permissible under the terms of the franchise agreement, the Court notes that the invoices attached by Defendants in support of their argument reference the RRF hotel in Bellmawr, New Jersey — not the RRF hotel in Duluth, Minnesota at issue here.  As such, Defendants' purported documentary support of their argument is inapplicable here, and their argument doubly fails for this reason.

| Invoice Number | Amount |
|:---:|:---|
| 228531 | $69.00 |
| 228532 | $69.00 |
| 236200 | $69.00 |
| 236201 | $69.00 |
| 236202 | $69.00 |
| 236203 | $69.00 |
| 236205 | $69.00 |
| 246780 | $13.35 |
| **Total** | **$496.35** |

(See Pl.'s Mot., Exs. C & D.)

For the same reasons as those articulated above in Civil Action 10-cv-4065, the Court agrees with Defendants that the Signature Program fees were impermissible under the franchise agreement in the first instance, and therefore cannot be included in RRF's total damages calculation. Accordingly, $496.35 will be deducted from Plaintiff's total claimed damages award.

## 2. Defendants' Recorded Payments

Defendants further allege that Plaintiff has failed to properly record several payments that the Patels made to RRF, and that Plaintiff's damages calculation should therefore be reduced accordingly. More specifically, Defendants aver that RRF did not record in excess of $15,000.00 of credit card payments made by Alpesh Patel in December of 2009. As support for this argument, Defendants attach a RRF Franchise Credit Card Payment slip in the

50

amount of $12,600.00, as well as copies of several check stubs
indicating various payments made by Alpesh to American Express.
(See Defs.' Resp. Opp'n, Exs. 9 & 10.)   The evidentiary record
indicates, however, that Plaintiff recorded this credit card
payment in its Applied Receipts Register, attached to its Motion
as Exhibit A.   Specifically, the Register indicates that on
October 12, 2009, the following payments were accounted for:

| Invoice Number | Receipt Number | Amount |
|---|---|---|
| 222311 | 119886C | $62.29 |
| 222154 | 119886C | $282.25 |
| 221921 | 119886C | $72.00 |
| 222434 | 119886C | $58.72 |
| 222496 | 119886C | $59.18 |
| 222952 | 119886C | $72.00 |
| 223212 | 119886C | $101.17 |
| 24418 | 119886C | $126.44 |
| 81347 | 119886C | $11,977.24 |
| 81126 | 119886C | $19.46 |
| 24723 | 119886C | + $230.75 CREDIT |
| **Total** | | **$12,600.00** |

(Pl.'s Mot., Ex. A, RRF Applied Receipts Register.)   Accordingly,
given Plaintiff's inclusion of this payment in its Applied
Receipts Register, and Defendants' lack of evidence to the
contrary, RRF's damages should not be reduced by this amount.

    Furthermore, Defendants likewise assert that RRF failed to
record a check payment made by Alpesh — Check No. 07311 — in the

amount of $4,358.00.  Unlike the check payments in Civil Action 10-cv-4065, Defendants have not attached a copy of the disputed check, nor any of Alpesh's bank statements to support their claim.  Further, the check stubs attached by Defendants depicting payments made to American Express in various amounts are inapplicable here for several reasons.  First, they indicate payments made by the Patels to American Express — not payments made to RRF.  Secondly, and more importantly, none of the attached stubs are from Check No. 07311.  Defendants have therefore introduced no evidence to support their claim that RRF failed to account for Check No. 07311.  Rather, although neither party raises this point, the Court through its own review of the record has determined that Check No. 07311 is the check disputed by Defendants in Civil Action 10-cv-4065.  More specifically, Check No. 07311 bears the hotel's address in Bellmawr, New Jersey, and was sent in an envelope with Asvin Patel's home in Moorestown, New Jersey as the return address.  The Court already addressed issues related to Check No. 07311 in Civil Action 10-cv-4065 above.  As such, Defendants' reliance on this check in the instant matter is misplaced.  Plaintiff's claimed damages will therefore not be reduced on these grounds.

### 3.  Interest Accrued on Defendants' Unpaid Franchise Fees

Just as in Civil Action 10-cv-4065, the Court directs Plaintiff to file additional certifications depicting the proper

interest calculation in light of the reduced damages total and
time that has lapsed since its last submission.

### 4.   Liquidated Damages

Defendants also assert that Plaintiff's calculation of
liquidated damages is incorrect because late fees and interest
accrual do not apply to liquidated damages under the terms of the
franchise agreement.  RRF, however, does not include liquidated
damages in its submitted damages calculation in this action.
Rather, what appears to have happened here is that Defendants
have mistakenly objected on these grounds because they have
essentially recycled their opposition brief from Civil Action 10-
cv-4065.  Thus, given that Plaintiff did not include liquidated
damages in its sought damages total here in the first place,
Defendants' contentions on this point are without merit.

### 5.   Lost Profits

In its June 28, 2012 Opinion and Order, the Court held that,
although RRF is entitled to recover lost profits based on
Defendants' premature termination of the franchise agreement,
questions of fact remained as to the precise amount of damages
resulting from any such lost profits.  (See Docket No. 44,
06/28/12 Op. at 39-40.)  Specifically, the Court noted that
Plaintiff's lost profits calculation may have been "inflated"
because it did not account for the fact that Defendants' revenues
had declined in the months preceding the termination of the

53

franchise agreement.  (Id.)  In its present Motion, RRF asserts that it is entitled to $82,419.44 in lost profits.  In support of its lost profits calculation, Plaintiff has attached a chart depicting the average gross room revenue for the hotel for the twenty-four months preceding Defendants' premature termination of the contract.  (See Pl.'s Mot., Ex. F.)

In their Response in Opposition, Defendants do not object to Plaintiff's calculation of its reasonably certain lost profits, nor have they introduced any evidence that would call Plaintiff's calculation into question.  Given the lack of objection, the Court finds that Plaintiff is entitled to include $82,419.44 for reasonably certain lost profits in its recoverable damages amount.

### 6.  Attorneys' Fees

In its Motion For An Order Determining the Amount Due and Entering Final Judgment, Plaintiff avers that it is entitled to $24,353.63 in attorneys' fees.  After Defendants filed their Response in Opposition and Motion for Reconsideration, RRF requested an additional $6,125.00 in attorneys' fees for services rendered related to researching and responding to Defendants.  Thus, RRF presently seeks attorneys' fees in the total amount of $30,478.63.  In support of its claim, Plaintiff has attached affidavits from its counsel, Mr. Peter J. Boyer, Esq. and Mr. David G. Gunther, Esq., detailing their fees, time spent, and services rendered, as well as a ledger of services rendered by

date in this litigation and copies of counsels' attorney profiles
and resumes.

The Court notes at the outset of its discussion that
Plaintiff's counsel's work in Civil Action 10-cv-4021 is directly
parallel to its work in Civil Action 10-cv-4065.  Indeed, as
expressed above, the dockets in these actions mirror one another,
as briefs containing essentially the same language and arguments
were filed on the same days by the same counsel.  For example, as
has been noted several times throughout this Opinion, counsel's
briefs on the instant Motions are almost precise word-for-word
copies of each other in both legal actions.  Indeed, this is why
the Court has presently chosen to jointly discuss and resolve the
disputes in one Opinion and Order.

As a result of the highly common ground between these two
civil actions, it makes sense that the time spent and labor
expended here were reduced.  To be sure, the research and
drafting of two entirely distinct legal briefs is a much more
time-consuming and laborious process than the filing of two
nearly identical briefs.  Indeed, Mr. Boyer appears to
acknowledge as much in his affidavit: "[s]imultaneously with the
handling of this matter, we also handled a related matter pending
before this Court captioned as Red Roof Franchising, LLC v. Asvin
Patel el al., Docket No. 10-4065 relating to a hotel in Bellmawr,
New Jersey. . . . Much of the underlying work, especially
research and drafting of motion papers, was initially done in the

4065 matter, and the benefit of that work is reflected in reduced fees and costs incurred and billed in this matter." (Pl.'s Mot., Ex. A, 7/27/12 Affidavit of Peter J. Boyer ¶ 9.)

In <u>Levy v. Global Credit & Collection Co.</u>, No. Civ.A.10-4229, 2011 WL 5117855 (D.N.J. Oct. 27, 2011), Judge Kugler, a U.S. District Court judge in this vicinage, addressed a scenario in which a law firm specialized in a certain area of the law and therefore frequently filed nearly identical briefing in numerous cases throughout the District. Given the repetitive nature of the cases and the recycling of briefing, the court found it appropriate to reduce counsel's claimed fee. <u>Id.</u> at *6-8. In so finding, Judge Kugler stated that: "[i]t is clear that Plaintiff's attorney has cranked out its fee petition in a mechanical fashion. The Court does not fault a firm experienced in FDCPA litigation for reusing its materials in litigation. However, the Court requires that the Plaintiff's fee reflect this mechanical practice." <u>Id.</u> at *8.

The primary difference between <u>Levy</u> and the instant case, however, is that Defendants have not objected to Plaintiff's proposed attorneys' fee award in any manner here. The law in this Circuit is very clear that a court cannot sua sponte decrease an attorneys' fee award absent direct and specific objections by opposing counsel. <u>See</u> <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990); <u>Bell v. United Princeton Props., Inc.</u>, 884 F.2d 713, 720 (3d Cir.1989); <u>Cunningham v. City of</u>

56

McKeesport, 753 F.2d 262, 267 (3d Cir.1985), Connor v. Sedgwick Claims Mgmt. Servs., Inc., No. Civ.A.09-1140, 2012 WL 2595072, at *3 (D.N.J. Dec. 18, 2012) (Hillman, J.); Wade v. Colaner, No. Civ.A.06-3715, 2010 WL 5479625, at *4 (D.N.J. Dec. 28, 2010); Jefferson v. City of Camden, No. Civ.A.01-4218, 2006 WL 1843178, at *2 (D.N.J. June 30, 2006) (Kugler, J.).  The burden of proving that a request for attorneys' fees is reasonable falls on the party seeking the fees.  Rode, 892 F.2d at 1183.  To satisfy this burden, the party must "submit evidence supporting the hours worked and rates claimed."  Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  If the party opposing the fee petition meets its burden of proving that an adjustment is necessary, the court has wide discretion to adjust the attorneys' fee for a variety of reasons.  Apple Corps. Ltd. v. Int'l Collectors Soc., 25 F.Supp.2d 480, 485 (D.N.J. 1998) (Greenaway, J.) (citing Rode, 892 F.2d at 1183).  "However, the court may not decrease a fee award based on factors not raised by the adverse party."  Apple Corps., 25 F.Supp.2d at 485 (citing Rode, 892 F.2d at 1183).  It is well established that, if the party opposing the fee award does not meet its burden, the court must award the attorneys' fees at the requested rate.  Apple Corps., 25 F.Supp.2d at 485 n.4 (citing Smith v. Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir. 1997)).  Indeed, "[t]he Court of Appeals has consistently emphasized that . . . the 'district court cannot decrease a fee award based on factors'" that the adverse party

has not specifically objected to.  Stair v. Thomas & Cook, No. Civ.A.06-4454, 2009 WL 1635346, at *2 (D.N.J. June 10, 2009) (Simandle, J.) (quoting Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005); Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001); Rode, 892 F.2d at 1183).

     To be clear, in the above discussion the Court in no way intends to comment on the reasonableness of Plaintiff's claimed attorneys' fees, but rather merely observes Defendants' rather surprising choice not to respond in any way, shape, or form. Plaintiff's request for fees incurred and Defendants' response — or lack thereof — are decisions left entirely to the discretion of the parties, and the Court makes no findings on the nature or amount of the attorneys' fee award in this action.  Given that Plaintiff has submitted sufficient evidence to support its sought attorneys' fee award and that Defendants have not objected, RRF is permitted to include $30,478.63 in its damages calculation to represent attorneys' fees it incurred in this litigation.

### 6.  Summary

     In Civil Action 10-cv-4120, RRF requests a monetary judgment against Defendants in the amount of $197,569.93.  Specifically, Plaintiff avers that it is entitled to $84,671.86 in unpaid franchise fees and accrued interest.  Of this amount, Plaintiff attributes $55,141.74 to outstanding fees and $29,530.12 for interest accrued thereon through July 2012.  With respect to

outstanding fees, $496.35 should be deducted from Defendants'
calculation for Signature Program fees, as they were not
authorized by the franchise agreement between the parties in the
first instance.  Moreover, as to the interest accrued on these
damages, Plaintiff is directed to file a supplemental
certification depicting the proper interest calculation in light
of the reduced damages total and time that has lapsed since its
last submission.

Plaintiff also seeks $82,419.44 in lost profits and
$30,478.63 in attorneys' fees.  Defendants have not objected to
either of these requests.  Accordingly, the Court finds that
Plaintiff is entitled to the following damages in Civil Action
10-cv-4120:

(1) $54,645.39 in damages for unpaid franchise fees
($55,141.74 – $496.35), plus interest accrued thereon; and

(2) $82,419.44 in lost profits; and

(3) $30,478.63 in attorneys' fees.

III.    CONCLUSION

Based on the above, the Court will deny Defendants' Motions
for Reconsideration in Civil Actions 10-cv-4065 and 10-cv-4021,
as Defendants may not raise new arguments or relitigate their
initial claims within the context of such motions.

The Court will grant in part and deny in part Plaintiff's
Motion For An Order Determining Amount Due and Entering Final
Judgment in Civil Action 10-v-4065.  Plaintiff's Motion is denied

to the extent it: (1) fails to account for check payments previously made by Defendants, (2) seeks to include charges for Signature Program fees in its overall damages amount, and (3) seeks to obtain interest accrued on liquidated damages.  All other aspects of Plaintiff's Motion will be granted.

Plaintiff's Motion For An Order Determining Amount Due and Entering Final Judgment in Civil Action 10-cv-4021 will likewise be granted in part and denied in part.  Plaintiff's Motion will be denied to the extent it seeks to include charges for Signature Program fees in its damages amount.  All other aspects of Plaintiff's Motion will be granted.

Moreover, Plaintiff is directed to file new certifications in support of the interest accrued on its damages in both Civil Actions.  These new interest calculations shall account for reduced damages totals and time lapsed since Plaintiff's last submission.

An appropriate Order follows.


                                          /s/ Noel L. Hillman
At Camden, New Jersey                     NOEL L. HILLMAN, U.S.D.J.


Dated: 03/28/2013